## ALYSSA RIVERA *v.* DOUBLE A TRANSPORTATION, INC., ET AL.
### (SC 15972)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued December 8, 1998—officially released March 16, 1999

*Louis D. Ferreri*, for the appellant (plaintiff).

*Douglas A. Casale*, for the appellees (defendants).

Opinion

KATZ, J. The principal issues in this appeal are whether, in the absence of an allegation of physical injury: (1) General Statutes § 52-584[1] applies to a claim for negligent infliction of emotional distress; and (2) the trial court properly determined that the plaintiff's claim for false imprisonment is controlled by § 52-584. The trial court concluded that the two year statute of limitations provided by § 52-584 barred both the claims of the plaintiff. We affirm the judgment.

The record discloses the following undisputed facts. On October 14, 1994, the plaintiff, Alyssa Rivera,[2] who was four years of age and developmentally delayed, was a passenger on a school bus owned and operated by the named defendant, Double A Transportation, Inc. (Double A). Double A transported the plaintiff to the Israel Putnam School, a facility operated by and under the direction of the defendant city of Meriden and the defendant board of education of the city of Meriden,[3]

---

[1] General Statutes § 52-584 provides: "Limitation of action for injury to person or property. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[2] Alyssa Rivera, a minor, brought this action through her mother, Evelyn Rivera, as mother and next friend. References to the plaintiff are to Alyssa only.

[3] The city of Meriden, the board of education of the city of Meriden and Elizabeth Ruocco, the Meriden superintendent of schools, who was also named as a defendant in this case, are hereinafter referred to jointly as the municipal defendants.

where she was enrolled in a special preschool program. The plaintiff remained on the bus after the other children had disembarked at the school. Neither the bus driver nor the school personnel searched the bus for remaining passengers. The driver then returned the bus to Double A's parking lot in Wallingford, where he left it, once again neglecting to verify that the vehicle was empty of passengers. The plaintiff, who was unable to leave, remained on the bus for approximately three hours until Double A's personnel discovered her.

On August 26, and August 27, 1997, on the basis of those events, the plaintiff brought a four count complaint alleging one count of negligent infliction of emotional distress and one count of false imprisonment against both Double A and the municipal defendants. As a result of the defendants' conduct, the plaintiff allegedly suffered great emotional distress, posttraumatic stress disorder, and aggravation of her developmental delays. The defendants moved for summary judgment, claiming that because the plaintiff had not commenced the action within the two year limitation period provided in § 52-584, the action was time barred. The plaintiff argued in response that because she had not sustained "bodily injuries," the three year limitation period of General Statutes § 52-577[4] should control. The trial court granted the defendants' motions as they related to the two counts alleging negligent infliction of emotional distress, but denied the motions as they pertained to the two counts alleging false imprisonment. Following the defendants' motion for reconsideration and reargument, the trial court granted the motions for summary judgment as to the false imprisonment counts, thereby rendering judgment on the entire complaint for the defendants.

---

[4] General Statutes § 52-577 provides: "Action founded upon a tort. No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

The plaintiff appealed the judgment of the trial court to the Appellate Court, and pursuant to Practice Book § 65-1, and General Statutes § 51-199 (c), this court transferred the appeal to itself.

I

The first issue requires an interpretation of the term "injury to the person" in § 52-584 and a concomitant determination of whether, in the absence of a claim for "physical injury," the trial court properly applied § 52-584 in granting the defendants' motions for summary judgment as to the two counts alleging negligent infliction of emotional distress.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381 [now § 17-46]. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994)." (Internal quotation marks omitted.) *Hertz*

*Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 380–81, 374 A.2d 820 (1998).

In the present case, no affidavit or other proof was offered by the defendants in support of their motions. In deciding whether the trial court properly concluded that § 52-584 controls this case, we are confined solely to the complaint and to the statute under consideration. Because it is undisputed that the claims of negligent infliction of emotional distress allege only emotional injuries, our scope of inquiry in deciding whether physical injury is required in order for § 52-584 to apply is further limited.

Our analysis of this issue is guided by well established principles of statutory construction. "Statutory construction is a question of law and therefore our review is plenary." *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d 851 (1996); *State* v. *Spears*, 234 Conn. 78, 86–87, 662 A.2d 80 (1995)." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 32, 699 A.2d 101 (1997).

We examine first the words of the statute itself. "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered . . . ." General Statutes § 52-584. The word "injury" is not defined in

chapter 926 of the General Statutes, entitled "Statute of Limitations." Section 52-584 uses the phrase "injury to a person" without limitation, and there is nothing in the statute to suggest the proposed limitation.

The legislative history is unfortunately somewhat deficient as it relates to what the legislature intended "injury to the person" to include. At the time of passage, the legislature was focused on the need for a time limit and the dangers inherent in allowing parties to bring stale claims. Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1957 Sess., p. 152. There are but two brief references to the inclusive nature of the term "injury": "Of course this statute is not limited to automobile accident cases. It is concerned with any negligence action . . . and also malpractice actions"; 13 H.R. Proc., Pt. 5, 1969 Sess., p. 2404, remarks of Representative Lawrence J. Merly; and "we know more and more, now, that many, many claims are not readily apparent. Now, there's an exception in the statute, when the injury was apparent or should have been known, now this is [a] very hard burden to get over. And there are all sorts of back injuries, nerve injuries some [e]motional injuries." 13 S. Proc., Pt. 5, 1969 Sess., p. 2060, remarks of Senator T. Clark Hull. Therefore, to the extent that the legislative history is informative as to the issue on appeal, it leaves the plaintiff's position highly vulnerable.

Finally, the plaintiff can point to no case, nor can we find one, to support her limited interpretation. On the contrary, although an injury signifies a wrong done to a person, or in other words, a violation of that person's right, we have concluded that the word is not used in such a technical sense in the statute. Rather, it is used more generally. In the context of applying § 52-584 to decide whether a particular action was commenced in a timely fashion, we have stated that "an injury occurs when a party suffers some form of actionable harm."

*Burns* v. *Hartford Hospital,* 192 Conn. 451, 460, 472 A.2d 1257 (1984); see *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 521, 562 A.2d 1100 (1989); *Lambert* v. *Stovell,* 205 Conn. 1, 6, 529 A.2d 710 (1987); *Catz* v. *Rubenstein,* 201 Conn. 39, 43, 513 A.2d 98 (1986); see *Durrett* v. *Leading Edge Products, Inc.,* 965 F. Sup. 280, 284–85 (D. Conn. 1997) (in negligence actions brought under Connecticut law, "injury" means actionable harm for statute of limitations purposes).

Contrary to the plaintiff's proposed interpretation, this court has never hypothesized that mental injury alone could not be the subject of "injury to the person," provided that it is causally connected to a defendant's negligence. Indeed, recent developments in tort law reflect a broadening of the definition of a compensable injury to include emotional distress even in the absence of physical impact or proof of an ensuing bodily injury. In *Montinieri* v. *Southern New England Telephone Co.,* 175 Conn. 337, 344, 398 A.2d 1180 (1978), this court stated that "there is no logical reason for making a distinction, for purposes of determining liability, between those cases where the emotional distress results in bodily injury and those cases where there is emotional distress only." Similarly, Judge Borden, then a member of the Appellate Court, stated in *Buckley* v. *Lovallo,* 2 Conn. App. 579, 589, 481 A.2d 1286 (1984), that "[w]e see no reason to subject a claim of mental suffering, which is ordinarily evidenced by subjective complaints, to stricter scrutiny or greater care than a claim of physical suffering evidenced by the same type of complaints. [M]edical science has unquestionably become sophisticated enough to provide reliable and accurate evidence on the causes of mental trauma. . . . Medical science and mental health fields have advanced sufficiently to enable a trier of fact to determine the extent of mental suffering by the same standard of proof

as physical suffering. . . . A plaintiff need only establish a claim for mental or emotional distress by a fair preponderance of the evidence, unfettered by any additionally exacting gauge." (Citations omitted; internal quotation marks omitted.) See also *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 683, 513 A.2d 66 (1986); *Petyan* v. *Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). This line of authority is persuasive because it recognizes that "the human body consists of bone, flesh, ligaments, and nerves, controlled by the brain . . . and that . . . the fact that the stimulus is gradual, in the form of sustained tension, worry, strain, frustration, or harassment, does not, in the opinion of the majority of the Courts that have dealt with the question, make nervous injury any the less compensable than if it were caused by sudden shock." (Internal quotation marks omitted.) *Battista* v. *Chrysler Corp.*, 517 A.2d 295, 297 (Del. Super. 1986).

This treatment is consistent with decisions of this court and the Appellate Court construing "health" to include mental health under General Statutes § 53-21,[5] which leaves that term undefined. See, e.g., *State* v. *Payne*, 240 Conn. 766, 774–75, 695 A.2d 525 (1997); *State*

---

[5] General Statutes § 53-21 provides: "Injury or risk of injury to, or impairing morals of, children. Sale of children. Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, or (3) permanently transfers the legal or physical custody of a child under the age of sixteen years to another person for money or other valuable consideration or acquires or receives the legal or physical custody of a child under the age of sixteen years from another person upon payment of money or other valuable consideration to such other person or a third person, except in connection with an adoption proceeding that complies with the provisions of chapter 803, shall be guilty of a class C felony."

v. *Jones*, 29 Conn. App. 683, 688–89, 617 A.2d 918 (1992); *State* v. *Velez*, 17 Conn. App. 186, 199, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989); *State* v. *Mancinone*, 15 Conn. App. 251, 277, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). Furthermore, courts in other jurisdictions have also interpreted health and injury to include mental health. See *Harrison* v. *State*, 644 N.E.2d 888, 890 (Ind. App. 1994) (affirming conviction for placing child in situation that may endanger his life or health, based on dictionary definition of "health" as including physical, psychological, mental and emotional states); *State* v. *Barr*, 354 So. 2d 1344, 1346–47 (La. 1978) ("unjustifiable pain and suffering" can include psychological harm under cruelty to juvenile statute); *Commonwealth* v. *Miller*, 385 Mass. 521, 525 n.6, 526, 432 N.E.2d 463 (1982) (affirming extortion conviction by ruling that phrase threatens "an injury to the person" includes severe mental anguish); *People* v. *Igaz*, 119 Mich. App. 172, 189, 326 N.W.2d 420 (1982) (same); *State* v. *Galusha*, 164 Vt. 91, 93–94, 665 A.2d 595 (1995) (same).

The plaintiff also argues that if the legislature had intended § 52-584 to apply when there has been only mental injury and no physical injury, it clearly would have done so. This argument fails to give sufficient weight to the breadth of the term "injury," which, under both the common and legal usage of the term, includes harm to the mind as well as to the body. See *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 570, 620 A.2d 118 (1993) (when statute "makes use of words [that] have an accepted meaning at the common law they ought, in the absence of other controlling reasons, to be expounded and received with that meaning" [internal quotation marks omitted]). Indeed, if the legislature had intended to distinguish between

harm to one's physical health and harm to one's mental health, it could have done so expressly as it has in other statutes. See, e.g., General Statutes § 46a-11a (concerning protection of persons with disabilities, abuse defined as "the wilful infliction of physical pain or injury or the wilful deprivation by a caretaker of services which are necessary to the person's health or safety"); General Statutes § 45a-677 (a), (b), (f) and (g) (distinguishing powers or duties of guardians of mentally retarded persons regarding physical or mental health and safety); General Statutes § 45a-670 (regarding inability of mentally retarded person "to meet essential requirements for his physical health and safety" for purposes of appointing guardians).

We further note that, because § 52-584 pertains to medical malpractice actions; *Lambert* v. *Stovell*, 205 Conn. 1, 5, 529 A.2d 710 (1987); the plaintiff's proposed interpretation of injury to the person could create a schism in the treatment of cases involving malpractice by a psychiatrist and malpractice by other types of medical doctors. It is counterintuitive to suggest that the legislature intended, without comment, to differentiate between different types of medical malpractice actions.

Finally, we note that the phrase "injury to the person" is used in a variety of statutes as well as in our rules of practice, but is defined in none of them. See, e.g., General Statutes § 52-251b (prevailing party in action "to recover damages *for injury to the person*" or to real property arising out of violation of General Statutes § 46a-58 [discriminatory practices] may recover attorney's fees and costs [emphasis added]); General Statutes § 37-3b (interest may be recovered and allowed in action to recover damages for injury to person, or to real or personal property, caused by negligence); Practice Book § 16-19 ("[i]n any action seeking damages *for injury to the person*, the amount demanded in the complaint shall not be disclosed to the jury" [emphasis

added]). We know of no case in which injury as used in these various provisions has been limited in accordance with the plaintiff's proposed interpretation.

Accordingly, we conclude that mental suffering, even if unaccompanied by physical trauma to the body, constitutes an injury to the person under § 52-584. To hold otherwise would create an artificial distinction at odds with our well settled cases in which the terms "injury" and "health" have been debated. Therefore, the trial court properly applied § 52-584 to determine that the action was untimely. Because there were no issues of fact remaining with regard to the two counts alleging negligent infliction of emotional distress, we conclude that the court correctly granted the defendants' motions for summary judgment on those counts.

## II

In the second issue on appeal, the plaintiff claims that the trial court improperly applied § 52-584 to her allegations of false imprisonment. Specifically, she claims that, in the absence of an allegation of physical injury, § 52-584 does not apply to the two counts of her complaint alleging that the defendants' conduct caused her to be imprisoned in the school bus. The plaintiff labels these claims as "sounding in negligent false imprisonment . . . ." That false imprisonment is an intentional tort, however, is well settled. "[F]alse imprisonment is the unlawful restraint by one person of the physical liberty of another." *Felix* v. *Hall-Brooke Sanitarium*, 140 Conn. 496, 499, 101 A.2d 500 (1953). "False imprisonment comes within the category of intentional torts for which the remedy at common law was an action of trespass. *McGann* v. *Allen*, 105 Conn. 177, 188, 134 A. 810 (1926). 'A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it.' 32 Am. Jur. 2d, False Imprisonment § 9;

1 Restatement (Second), Torts § 35." *Green* v. *Donroe,* 186 Conn. 265, 268, 440 A.2d 973 (1982). Nothing less than a rather extreme brand of recklessness will substitute for the standard requirement of intention in false imprisonment cases. Id., 269.

The second issue in this appeal does not, however, turn on the plaintiff's characterization of these counts or whether, despite this history, we should recognize a cause of action for negligent false imprisonment. Rather, irrespective of the existence of such a creature, the plaintiff's second claim rests entirely on her proposed distinction between mental and physical injury, a distinction we have already rejected. As we have stated in this opinion, in determining the applicability of § 52-584, we do not differentiate between physical and mental injury. Therefore, we reject this claim.

## III

The plaintiff next contends that the trial court improperly granted the defendants' motion for summary judgment because there existed a material issue of fact as to whether the defendants' conduct constituted intentional false imprisonment, an intentional tort governed by § 52-577. Specifically, the plaintiff asserts that because the defendants' alleged conduct was "substantially certain" to cause the plaintiff harm, they intended to confine her. She asserts that this issue of intent was sufficient to support the application of § 52-577. The defendants argue two points in response. First, they claim that the plaintiff failed to preserve the issue. Second, they argue that the complaint alleges only reckless conduct, which should not be equated with intentional conduct, particularly when § 52-584 specifically covers allegations of recklessness. We agree with the defendants' first response. Consequently, because she failed properly to preserve the third claim, we do not decide

whether the complaint sufficed to raise a material issue of fact regarding the defendants' intent.

"[B]ecause our review is limited to matters in the record, we will not address issues not decided by the trial court. Practice Book § 4185, [now § 60-5] ('court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial'); *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims 'neither addressed nor decided' by court below are not properly before appellate tribunal); *State* v. *Miller*, 186 Conn. 654, 658, 443 A.2d 906 (1982) ('[o]nly in the most exceptional circumstances will this court consider even a constitutional claim not properly raised and decided in the trial court')." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998).

The plaintiff's objection to the defendants' motions for summary judgment asserts that "the issue is whether as a matter of law the plaintiff's case is governed by Connecticut General Statutes § 52-577, not § 52-584, and therefore is not barred by the Statute of Limitations." The *only* argument advanced in the plaintiff's objection to the motions for summary judgment, however, is the one we disposed of in the first issue addressed in this opinion—that because the allegations of psychological suffering are "not a claim for 'physical injury' . . . they are governed by Connecticut General Statutes § 52-277." Additionally, there appears to have been no oral argument with regard to the plaintiff's objection.[6] Consequently, no transcript was filed with this court.

Therefore, the trial court did not have the opportunity to rule on the plaintiff's claim that there existed an issue of material fact as to the defendants' intent. It is

---

[6] On the first page of the plaintiff's objection to the motions for summary judgment is stamped the notation, "no oral argument; testimony not required."

the appellant's burden to provide an adequate record for review. Practice Book § 60-5; *Barnes* v. *Barnes*, 190 Conn. 491, 494, 460 A.2d 1302 (1983). It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision; *Gerber & Hurley, Inc.* v. *CCC Corp.*, 36 Conn. App. 539, 543, 651 A.2d 1302 (1995); to clarify the legal basis of a ruling; *Leverty & Hurley Co.* v. *Commissioner of Transportation*, 192 Conn. 377, 379, 471 A.2d 958 (1984); or to ask the trial judge to rule on an overlooked matter. *Wolk* v. *Wolk*, 191 Conn. 328, 335 n.1, 464 A.2d 780 (1983). In the absence of any such attempts, we decline to review this issue.

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and BORDEN and NORCOTT, Js., concurred.

BERDON, J., concurring in part and dissenting in part. First, to the extent that the majority holds that our standard of review on the granting of a motion for summary judgment based solely on the pleadings is de novo—I agree.

Second, although I do not join the analysis of the majority opinion with respect to the applicability of the two year statute of limitations set forth in General Statutes § 52-584, I agree with the bottom line that it applies to negligent conduct whether it results in physical or mental injury to the person. Thus, the trial court correctly granted the motions for summary judgment on those counts that allege causes of action for negligent infliction of emotional distress.

My agreement with the majority opinion ends there. The portion of the opinion pertaining to the counts alleging false imprisonment stands our precedent on its head. The majority does not deny that those counts

raise a cause of action for false imprisonment; nor does it deny that false imprisonment is an intentional tort that is governed by the three year statute of limitations period pursuant to General Statutes § 52-577; nor does it deny that the action was brought within the three year period required by § 52-577. Rather, the majority affirms the trial court's decision to grant the motions for summary judgment on the false imprisonment counts on the following basis: in the trial court the plaintiff allegedly failed to preserve the issue of whether the "court improperly granted the defendants' motion[s] for summary judgment because there existed a material issue of fact as to whether the defendants' conduct constituted intentional false imprisonment, an intentional tort governed by § 52-577." That is absolutely incorrect.

Notwithstanding the majority's arguments to the contrary, the issue before the trial court was whether the complaint sufficiently alleged a cause of action for false imprisonment.[1] This question was distinctly raised by the parties when the trial court, upon reconsideration, granted the defendants' motions for summary judgment on the false imprisonment counts. The trial court initially denied the motions for summary judgment as to the first and second counts, presumably because those counts in fact alleged a cause of action for false imprisonment and came within § 52-577, the three year statute of limitations. The defendants' motion for reargument and reconsideration of their motions for summary judgment placed the matter directly at issue again when they alleged in the motion for reconsideration: "It is the Defendants' position that the Plaintiff's Counts 1 and 2 sound in . . . *recklessness* and as a result are subject to [General Statutes] § 52-584, the two year negligence statute of limitations and are therefore time

---

[1] See footnote 3 of this concurring and dissenting opinion and the accompanying text regarding the character of the motion at issue.

barred." (Emphasis added.) After reconsideration, however, the trial court inexplicably granted the motions for summary judgment.

Nevertheless, this court made it absolutely clear in *Green* v. *Donroe*, 186 Conn. 265, 440 A.2d 973 (1982), as the majority concedes, that recklessness can be the basis of the intentional tort of false imprisonment. In *Green*, the court held: "False imprisonment comes within the category of intentional torts for which the remedy at common law was an action of trespass. *McGann* v. *Allen*, 105 Conn. 177, 188, 134 A. 810 (1926). 'A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it.' 32 Am. Jur. 2d, False Imprisonment § 9; 1 Restatement (Second), Torts § 35. . . . In the context of false imprisonment the label of 'reckless' fairly characterizes a state of mind amounting to knowledge that confinement is substantially certain to result from the wrongful conduct but not attaining the proportions of an actual intention to bring it about. Nothing less than this rather extreme brand of recklessness will substitute for the standard requirement of intention in false imprisonment cases." (Citations omitted.) *Green* v. *Donroe*, supra, 268–69. Therefore, the allegations by the plaintiff that the defendants' predicate conduct was reckless supports the plaintiff's cause of action for the tort of false imprisonment.

Despite the foregoing, the majority predicates its decision, in part, on the fact that the plaintiff's appellate brief labels part of her complaint as sounding in *"negligent* false imprisonment . . . ." (Emphasis added.) The truth of the matter is that the plaintiff was merely echoing *Green* v. *Donroe*, supra, 186 Conn. 268–72, wherein

the court's opinion is peppered with references to negligence, albeit in the form of an extreme brand of recklessness, as an adequate basis for an action for false imprisonment. See, e.g., id., 270 ("[n]egligent conduct which results in a confinement of sufficient consequence to constitute the actual damage required to maintain a negligence action is a sufficient basis for imposing liability").

More importantly, counts one and two of the complaint clearly allege a cause of action based upon intentional false imprisonment. Both counts are labeled "False Imprisonment . . . ." Among the other allegations in each count, the plaintiff alleges that "[a]t all relevant times herein subsequent to the departure of the bus from school, the minor plaintiff was locked and/or imprisoned in the bus and unable to leave." Moreover, in their motion for reargument and reconsideration, which I quoted previously, the defendants concede that the complaint alleges false imprisonment based on the reckless behavior of the defendants. Thus, the record is adequate for review because, as the majority recognizes in part I of its opinion, "[i]n deciding whether the trial court properly concluded that § 52-584 controls this case, we are confined solely to the complaint and to the statute[s] under consideration." Consequently, we need no articulation of the trial court's granting of the motions for summary judgment in order to employ a plenary review of this issue.

The majority implicitly assents, however, to the defendants' argument that "the plaintiff did not submit any affidavit and/or other proof which raised an issue of material fact." This is a vacuous argument for two reasons. First, the defendants were the moving parties and, as the majority concedes in part I of its opinion, had the burden of proof that they were entitled to judgment as a matter of law.[2] Second, since no affidavits

---

[2] A fundamental problem with the majority opinion is that it implicitly places the burden of proof on the plaintiff. It is well settled, however, that

were submitted by either party, the defendants obviously were relying on the insufficiency of the allegations in the complaint. In other words, the motions for summary judgment took on the role of motions to strike.[3] As I have shown, both counts allege a cause of action based upon the intentional tort of false imprisonment subject to the three year statute of limitations.

For this court to ignore pleadings that clearly allege a cause of action based upon the intentional tort of false imprisonment is reminiscent of what Charles Dickens, more than 100 years ago, vividly portrayed about "the mischief done by abuse of the common law forms of civil procedure. *Rich* v. *Director, Office of Workers' Compensation Programs,* 798 F.2d 432, 434 (11th Cir. 1986); see also 1 C. Dickens, Bleak House (International Collectors Library) c. 1, p. 4 (describing members of bar as tripping one another up on slippery precedents, [and] groping knee-deep in technicalities)." (Internal quotation marks omitted.) *Martin* v. *Plainville,* 240

the moving party, in this case the defendants, has the burden of demonstrating that it is entitled to summary judgment. *Hertz Corp.* v. *Federal Ins. Co.,* 245 Conn. 374, 381, 713 A.2d 820 (1998). It seems that the majority ignores its own concession.

[3] The defendants' legal argument is actually a claim that the plaintiff has not alleged a legally sufficient cause of action for the intentional tort of false imprisonment. Before an answer is interposed, such a claim should be tested by a motion to strike pursuant to Practice Book § 10-39 (a) ("[w]henever any party wishes to contest [1] the legal sufficiency of the allegations of any complaint . . . that party may do so by filing a motion to strike the contested pleading or part thereof"). The trial court, however, decided this issue based on a motion for summary judgment pursuant to Practice Book § 17-49 ("[summary judgment] shall be rendered forthwith if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law"). There is a substantial difference between a motion for summary judgment and a motion to strike. The granting of a defendant's motion for summary judgment puts the plaintiff out of court as it did in this case. See Practice Book § 17-49. The granting of a motion to strike allows the plaintiff to replead his or her case. See Practice Book § 10-44. It appears that the procedural irregularity of the present case simply has caused the majority to be confused.

Conn. 105, 117 n.4, 689 A.2d 1125 (1997) (*Berdon, J.*, dissenting).

The majority's unfair reading of the pleadings and its refusal to review the trial court's decision regarding the plaintiff's claims of false imprisonment deprive this plaintiff, who was of the tender age of four at the time of the incident, of her day in court. Consequently, she has no opportunity to obtain compensation for her emotional distress, posttraumatic stress disorder and the aggravation of her developmental delay allegedly caused by the defendants' actions. Justice for this young child—who was locked in a school bus alone for approximately three hours—is nowhere to be found in the majority opinion.

Accordingly, I concur in part and dissent in part.

