[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT # 113
On October 13, 1998, the plaintiff, Alfred Schrader, filed a five count complaint against the defendants, Real Time Marketing Company d/b/a Hometown Marketing (Real Time), Thomas P. Hickey and William E. Sturdevant arising out of an employment relationship between himself and Real Time. During the time period alleged in the complaint, Real Time was in the business of publishing playbills for the performing arts and Hickey and Sturdevant were officers of Real Time. In June 1996, Real Time CT Page 285 hired Schrader as an independent sales agent. In January 1997, Schrader became responsible for selling advertising space on behalf of Real Time for playbills for the Bushnell, the Hartford Stage Company, the Hartford Symphony and the Hartford Ballet for the remainder of the 1996-1997 performing arts season and then the 1997-1998 performing arts season. A performing arts season begins in September and runs through June of the following year.
Initially the parties agreed that Schrader would earn a 15 percent commission on all sales that he generated, payable upon receipt of payment from each client. On June 17, 1997, the defendants and Schrader entered into a special commission arrangement that allowed Schrader to take cash advances against future commissions. On September 15, 1997, Schrader was terminated because he refused to sign a noncompete agreement. At the time of his termination, Schrader had sold $350,091.50 worth of advertising for the 1997-1998 performing arts season. Real Time paid Schiader $23,834.09 pursuant to the contract. Schrader alleges that Real Time refuses to pay him 27,694.36 which is due under the contract.[1]
Schrader alleges: breach of contract and violation of General Statutes § 31-72 et seq. against Real Time (count one); fraudulent misrepresentation against Real Time (count two); breach of the covenant of good faith and fair dealing against Real Time (count three); breach of contract and violation of General Statutes § 31-72 et seq. against Hickey and Sturdevant (count four); and fraudulent misrepresentation against Hickey and Sturdevant (count five). On February 3, 1999, the defendants filed an answer and special defenses to the complaint. The defendants assert the following special defenses: 1) accord and satisfaction; 2) satisfaction; 3) res judicata; 4) collateral estoppel; 5) that Schrader abandoned and terminated the terms and conditions of his contract; 6) that the individual defendants, Hickey and Sturdevant, are not personally liable for Real Time's debt to Schrader; and 7) that Schrader has been unjustly enriched as a result of overpayment by the defendants.
On September 7, 1999, Schrader moved for summary judgment on the first and fourth counts of his complaint and all of the defendants' special defenses on the grounds that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Specifically, "pursuant to the clear, unambiguous contract between the parties, the defendants failed and refused to pay the plaintiff commissions due in the CT Page 286 amount of $27,694.36. In their zeal to deny the plaintiff his commissions, the defendants invented new contract terms after terminating the plaintiff and completely ignored the agreement in place between the parties." (Plaintiff's Motion For Partial Summary Judgment, pp. 1-2.)
Moreover, Schrader argues that the defendants' special defenses of accord and satisfaction and that the debt between the parties has been satisfied fail because the defendants did not allege nor was there any accord or satisfaction. Schrader also asserts that the defendants' special defenses of res judicata and collateral estoppel fail because there was no prior adjudication between the parties. Schrader further avers that the defendants' special defenses of unjust enrichment and abandonment on the part of Schrader contain no allegations to support such claims. Lastly, Schrader argues that the individual defendants, Hickey and Sturdevant, are personally liable for the debt of the defendant Real Time because they are employers under the Wage Act, General Statutes § 31-72 et seq.[2] Schrader filed a general reply denying all of the special defenses raised by the defendants.
The standards that the court must apply in deciding a motion for summary judgment are well established. "Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Miller v.United Technologies Corp. , 233 Conn. 732, 744-45, 660 A.2d 810
(1995). "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 378, 260 A.2d 596 (1969). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case. . . ." (Citations omitted; internal quotation marks omitted.) Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). "Issue of fact encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." (Internal quotation marks omitted.) United Oil Co. v.Urban Redevelopment Commission, supra, 379. CT Page 287
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v.Double A Transportation, Inc., 248 Conn. 21, 24, 727 A.2d 204
(1999). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
Schrader avers that the first and fourth counts of the complaint are ripe for summary judgment because they involve simple, straightforward issues of fact that the defendants have admitted to in their answer and interrogatory responses. Schrader relies on Jones Destruction, Inc. v. Upjohn, 161 Conn. 191, 199,286 A.2d 308 (1971), for the proposition that an admission in the defendant's answer is a judicial admission conclusive on the defendant, and the matter admitted is not in issue. Schrader also cites Hirsh v. Thrall, 148 Conn. 202, 206-207, 169 A.2d 271
(1961), for the proposition that an answer by a party to an interrogatory is a judicial admission to the same extent as an answer to an allegation in a complaint.
Specifically, Schrader asserts that it is undisputed that the defendants agreed to pay him 15 percent on all sales that he generated for the 1997-1998 performing arts season. (Complaint, First Count, ¶ 8; Answer, First Count, ¶ 2). Moreover, Schrader attests that the contract between the parties provided that Schrader would be paid his full commission upon receipt of full payment by the advertiser to Real Time. (Plaintiff's Exhibit A, Schrader Affidavit, August 25, 1999, ¶ 5; Plaintiff's Exhibit E, June 17, 1997 Memoranda; Plaintiff's Exhibit D, June 6, 1997 Notes.)[3] Schrader also asserts that the defendants verified that he generated gross sales equaling $350,091.50 and that they collected $343,523.62 on the sales he generated for the 1997-1998 performing arts season. (Plaintiff's Exhibit B, Defendants' Answers to Interrogatories 3 and 4.) Thus, Schrader avers that the 15 percent commission due him under the terms of the contract equals $51,528.45 ($343,523.02 x .15 = $51,528.45). CT Page 288
The defendants, however, only paid Schrader $23,834.09 for the 1997-1998 performing arts season. (Plaintiff's Exhibit A, Schrader Affidavit, August 25, 1999, ¶ 9; Plaintiff's Exhibit B, Defendants' Answer to Interrogatory 6; Plaintiff's Exhibit H, September 18, 1997 Letter, p. 2.) Accordingly, Schrader asserts that the defendants owe him $27,694.36 pursuant to the contract for the 1997-1998 performing arts season ($51,528.45-$23,834.09 = $27,694.36). Schrader further asserts that he is due twice this amount plus attorney's fees, costs and interest pursuant to General Statutes § 31-72 et seq.
The defendants object to Schrader's motion for partial summary judgment on the grounds that genuine issues of material fact exist as to what constitutes Schrader's employment contract. In addition to evidentiary facts in issue, the defendants allege that there are also questions regarding how a jury would characterize such evidentiary facts and what inferences and conclusions a jury would draw from these disputed facts.
Specifically, the defendants contend that payment of Schrader's commission was based on Schrader selling advertisements and servicing these contracts throughout the term of the performing arts season. (Defendants' Exhibit A, Hickey Affidavit, November 17, 1999, ¶¶ 5, 6; Defendants' Exhibit A, Hickey Affidavit, November 17, 1999, Exhibit A-1, March 27, 1996 Letter; Defendants' Exhibit D, Baillargeon Affidavit, November 17, 1999, ¶¶ 7, 10; Defendants' Exhibit I, June 17, 1997 Letter.) The defendants also assert that they discussed Schrader's job responsibilities, which included servicing an advertiser's contract on an ongoing basis during the performing arts season, with him both before and during his employment at Real Time. (Defendants' Exhibit A, Hickey Affidavit, November 17, 1999, ¶¶ 5-8, 11-12.) The defendants further assert that Schrader was aware of the terms of his employment agreement and that this type of arrangement is customary in the industry. (Defendants' Exhibit A, Hickey Affidavit, November 17, 1999, ¶¶ 17, 18; Defendants' Exhibit D, Baillargeon Affidavit, November 17, 1999, ¶¶ 17, 18.)
The defendants contend that since Schrader left after only four playbills were published, the defendants had to have other employees service Schrader's accounts for the remainder of the 1997-1998 performing arts season. (Defendants' Exhibit A, Hickey Affidavit, November 17, 1999, ¶ 15; Defendants' Exhibit D, Baillargeon Affidavit, November 17, 1999, ¶¶ 14, 15.) Thus, the defendants assert that Schrader was only entitled to a prorated CT Page 289 percentage of his commission based upon the number of playbill programs published at the time of his termination. (Defendants' Exhibit A, Hickey Affidavit, November 17, 1999, ¶¶ 16-18; Defendants' Exhibit A, Hickey Affidavit, November 17, 1999, Exhibit A-1, March 27, 1996 Letter; Defendants' Exhibit D, Baillargeon Affidavit, November 17, 1999, ¶¶ 16-18.) The defendants assigned a value of $2,010.55 for each of the twenty five playbills to be published during the 1997-1998 performing arts season by dividing Schrader's actual commission by twenty five. (Plaintiff's Exhibit H, September 18, 1997 Letter, p. 2; Plaintiff's Exhibit B, Defendants' Answer to Interrogatory 6.) Accordingly, since only four of the twenty five playbills were published at the time of Schrader's termination, the defendants assert that Schrader was only entitled to $8,042.20 in commission ($2,010.55 x 4 = $8,042.20). (Plaintiff's Exhibit B, Defendants' Answer to Interrogatory 6.) Moreover, the defendants assert that they paid Schrader $23,834.09 of which $17,802.44 was advanced against commissions. (Defendants' Exhibit A, Hickey Affidavit, ¶ 16.)
The court concludes that there are various genuine issues of material facts which preclude the granting of summary judgment on counts one and four. Among these issues is whether Schrader was entitled to the full 15 percent commission pursuant to his employment contract or whether he was entitled to only a prorated percentage. Although Schrader offered evidence in support of his position, the defendants have provided an evidentiary foundation including the affidavits of Thomas Hickey and Martha Baillargeon that refute Schrader's evidence. Thus, Schrader has failed to meet his burden of showing that there are no genuine issues of material fact and that he is entitled to summary judgment as a matter of law. Accordingly, Schrader's motion for summary judgment on the first and fourth counts of his complaint is denied.
The remaining issue before the court is whether Schrader's motion for summary judgment should be granted on the defendants' special defenses. "The superior courts are almost in unanimous agreement that a motion for summary judgment as to a special defense is improper since Practice Book § 17-44 makes no provision for it." (Internal quotation marks omitted). Prigitanov. Connecticut Life Casualty Ins. Co., Superior Court, judicial district of New Haven at Meriden, Docket No. 254302 (August 29, 1996, Dorsey, T.J.R.); see also Smith v. National Grange MutualIns. Co., Superior Court, judicial district of New Haven at CT Page 290 Meriden, Docket No. 250908 (August 29, 1996, Silbert, J.) (17 Conn. L. Rptr. 522); Duboura v. Osborn, Superior Court, judicial district of Litchfield, Docket No. 065070 (July 5, 1995, Pickett,J.). In the present case, even without the special defenses, the pleadings and other documents still leave in dispute such fundamental issues as the terms of Schrader's employment contract. Thus, disposition of the special defenses in this case would not leave Schrader in a position where he is entitled to judgment on his complaint as a matter of law. Hence, Schrader's motion for summary judgment is denied in its entirety.
Hennessey, J.