[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT
The plaintiff a public interest and animal protection organization, filed a one count complaint dated December 30, 1997, seeking to enjoin the defendant, Arthur Rocque, Commissioner of the Department of Environmental Protection (Commissioner), from permitting or conducting any type of controlled hunting of fawn deer at Bluff Point Coastal Reserve in Groton (Bluff Point).[1] The plaintiff alleged that the Commissioner implemented such a controlled hunt in January, 1996 at Bluff Point during which fawn deer were killed in violation of General Statutes § 26-86f.[2] The plaintiff now seeks declaratory and injunctive relief pursuant to the Connecticut Environmental Protection Act (CEPA), General Statutes § 22a-15 et seq., which provides, inter alia, the authority to bring suit to protect the public trust in the air, water, and other natural resources of the State from unreasonable pollution, impairment or destruction.[3]
The parties agreed that there are no genuine issues of material fact in this case and that judgment should be based upon an issue of law. Specifically, the only legal issue in this case is what is the meaning of fawn deer under § 26-86f.
The standards that the court must apply in deciding a motion for CT Page 7079 summary judgment are well established. "Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Miller v. United Technologies Corp., 233 Conn. 732,744-45, 660 A.2d 810 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v. Double A Transportation, Inc. 248 Conn. 21, 24,727 A.2d 204 (1999).
The parties have stipulated to the following facts: since 1984, the Department of Environmental Protection, Bureau of Natural Resources, Wildlife Division, has documented severe deer overbrowsing of vegetation, the stripping of bark from trees and overwinter deer starvation. In January 1996, the Department of Environmental Protection (DEP), acting pursuant to General Statutes §§ 26-3 and 26-86a, and § 26-86a-11
et seq. and § 23-4-4 (b) of the Regulations of Connecticut State Agencies, implemented a controlled hunt to reduce the deer population at Bluff Point. Based upon data gathered from the biological examination of the 233 deer removed from Bluff Point in 1996, 140 were classified as adults, 39 were classified as yearlings and 54 were classified as fawns. The DEP records biological data for deer herds throughout the state using the term fawn or young of the year for the class of deer that are less than one year old.
The parties further stipulate that the DEP has, for at least thirty years, interpreted § 26-86f to prohibit the killing or removal of spotted fawns. The DEP's deer biologist opined that the term fawn deer as used in § 26-86f refers to a young deer with a spotted coat because fawns that have lost their spotted coats may be difficult or impossible for the average hunter to distinguish in the wild from yearlings or adult deer. Most fawns are born between May 15 and June 30 and they lose their spots in late August or early September. They become functional ruminants (stomach adapted for feeding on plant fibers) by two months of age and are weaned at two to four months of age; once weaned they are no longer dependent on their mothers. They are sexually mature and capable of breeding at six to seven months; gestation is approximately seven months.
Lastly, the parties stipulate that whenever a very small deer is taken CT Page 7080 from the wild, law enforcement officers examine the deer to determine whether it has visible spots and is therefore a fawn. If the deer does not have a spotted coat, it is considered an adult deer. The only other reliable way to determine whether a deer without a spotted coat is less than one year of age is by examining its teeth. Conservation officers charged with enforcing § 26-86f cannot rely on the physical size of a deer to determine whether it is less than a year old. Indeed, it is impossible to distinguish between a 10 month old deer and a 13 month old deer in the wild. Young of the year deer at seven or eight months of age have the same color and habits as adult deer. Distinguishing between a young of the year at seven or eight months and a yearling or adult deer from visible observation is not reliable. Most deer do not have antlers.
Thus, having agreed that there are no genuine issues of material fact, the sole question of law upon which this case turns is the interpretation of fawn deer under § 26-86f. The parties agree that the term fawn deer has not been construed by our courts and is not defined within the language of § 26-86f. The plaintiff argues that a fawn deer under § 26-86f must mean a deer less than one year of age because (I) the statute makes no reference to the words "spots" or "color", (2) the purpose of the statute was to protect deer until they could reproduce, and (3) the Commissioner, at times, utilizes that same definition. It stresses that the Commissioner stipulated to the fact that it records biological data for deer herds using the term fawn or young of the year for the class of deer that are less than one year old. The Commissioner counters that under § 26-86f fawn deer can only mean a spotted deer.
First, as to the lack of definition or reference to the word "spots" or "color" in the statute or legislative history, both parties include references to dictionary definitions. Our Supreme Court has acknowledged the usefulness of looking to the common definition of a word as defined in dictionaries. See Connecticut National Bank v. Giacomi, 242 Conn. 17,33, 699 A.2d 101 (1997). Not surprisingly, the proffered definitions support both sides. The plaintiff cites Webster's New World Dictionary of the American Language, (College Ed., 1960) definition, "fawn: (1) a young deer less than one year old" and Funk and Wagnalls (1968) definition, "fawn: (1) a young deer; especially, a buck or doe in its first year". The defendant counters with Webster's Third New International Dictionary of the English Language Unabridged (1963) definition, "fawn: a young deer [especially] one still unweaned or retaining a distinctive baby coat" and also Webster's New Twentieth Century Dictionary of the English Language, Unabridged (1979) definition, "fawn: a young deer; a buck or doe less than one year old and, alternatively, as "a pale, yellowish brown, the color of a fawn." The Random House Dictionary of the English Language, (2nd Ed. 1987) defines fawn as "a young deer, esp. an unweaned one;" it accompanies the definition with a sketch of a spotted deer. In this case, CT Page 7081 the dictionary definitions do not resolve the issue.
The plaintiff next argues that the purpose of the initial legislation was to preserve the deer population. The parties both agree that the deer population was not as plentiful as it is today and that the subject statute was passed with a companion statute, § 26-86e, which allows for the regulation of hunting doe deer. Other than one reference to allowing fawn deer to grow to maturity to perpetuate the herd, the legislative history is of no assistance.
We thus turn to the Commissioner's use of different definitions of the word "fawn". While the plaintiff's argument is, at first glance, attractive, it does not carry the day. Our Second Circuit along with at least two other circuits, the First Circuit and the District of Columbia Circuit, have held that "`[i]t is not impermissible under Chevron [U.S.A.Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43,104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)] for an agency to interpret [the same] imprecise term differently in two separate sections of a statute which have different purposes.'" Aquarius Marine Co. v. Pena, 64 F.3d 82,88 (2nd Cir. 1995), quoting Abbott Laboratories v. Young, 920 F.2d 984,987 (D.C. Cir. 1990), cert. denied, 502 U.S. 819, 112 S.Ct. 76,116 L.Ed.2d 49
(1991); see also Comite Pro Rescate v. Sewer Authority, 888 F.2d 180,187 (1st Cir. 1989), cert. denied, 494 U.S. 1029, 110 S.Ct. 1476,108 L.Ed.2d 613 (1990) (upholding different agency interpretations of the same phrase); National Assn. of Casualty and Surety Agents v. Board ofGovernors of the Federal Reserve System, 856 F.2d 282, 287 (D.C. Cir. 1988), cert. denied, 490 U.S. 1090, 109 S.Ct. 2430, 104 L.Ed.2d 987
(1989) (same). Likewise, in the present case, although the DEP uses the term fawn for the class of deer that are less than one year old when recording biological data, the DEP, for at least thirty years, has interpreted the word fawn under § 26-86f to prohibit the killing or removal of spotted fawns only.
The Commissioner relies on Sweetman v. State Elections EnforcementCommission, 249 Conn. 296, 732 A.2d 144 (1999), for the proposition that "[i]n interpreting a statute, common sense must be used. . . . The law favors rational and sensible statutory construction. . . . The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. . . . When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results." (Citations omitted; internal quotation marks omitted.) Id., 306-307. The Commissioner argues that § 26-86f must be construed to prohibit only the killing of spotted fawns based on the rational that if § 26-86f
CT Page 7082 applied to all deer less than one year of age, regardless of whether a deer has spots, it would be unenforceable since deer that have shed their spotted coats can not practically be distinguished from other deer. Thus, there is no way that a hunter could determine the age of the deer. This court agrees.
Section 26-86f is a penal statute and the Connecticut Supreme Court has articulated that "[s]everal additional tenets of statutory construction guide our interpretation of a penal statute. First, we must take care not to impose criminal liability where the legislature has not expressly so intended. . . . Second, [c]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant. . . . Finally, unless a contrary interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state." (Citations omitted; internal quotation marks omitted.) State v. Dash, 242 Conn. 143,147, 698 A.2d 297 (1997). "Under the requirements of due process of law mandated by our federal and state constitutions, a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid. . . . [A] statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." (Internal quotation marks omitted.) State v. Dyson, 238 Conn. 784, 796, 680 A.2d 1306 (1996);Benjamin v. Bailey, 234 Conn. 455, 483, 662 A.2d 1226 (1995); State v.Linares, 232 Conn. 345, 354, 655 A.2d 737 (1995).
In the present case, construing § 26-86f to prohibit only the killing of spotted fawns enables a person to know what conduct he must avoid and therefore comports with the requirements of due process of law mandated by our federal and state constitutions. See State v. Dyson,
supra, 238 Conn. 796. If the court were to find that § 26-86f applied to all deer less than one year of age, regardless of whether the deer had spots, people taking deer without spots would have no reliable way to know if they were complying with the statute prior to taking the deer. Once deer shed their spotted coats they are difficult to distinguish from deer that may be legally taken and the only reliable way to determine whether a deer without a spotted coat is less than one year of age is by examining its teeth. That is simply not feasible. Thus, construing fawn deer under § 26-86f to mean a deer less than one year of age would not comport with the requirements of due process of law. See State v.Dyson, supra, 796.
Finally, it must be noted that if the statute were unenforceable, it would create the anomalous situation that there would be no prohibition CT Page 7083 against the killing of any deer. The plaintiff's construction would make the statute ineffective and unworkable, and would lead to difficult and bizarre results. See Sweetman v. State Elections Enforcement Commission,
supra, 249 Conn. 307. Surely, this is not what the plaintiff seeks.
The court therefore finds that fawn deer under § 26-86f means a spotted fawn. Obviously with this interpretation there is no violation of § 26-86f and, thus, no violation of CEPA. Accordingly, the court grants the Commissioner's motion for summary judgment and denies the plaintiff's motion for summary judgment.
Berger, J.