[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #116
The defendant has moved for summary judgment on the ground that he is immune from liability pursuant to the Volunteer Protection Act (VPA),42 U.S.C. § 14501 et seq. The VPA was enacted on June 18, 1997, and has not been used as a defense in Connecticut. For the reasons stated below, the defendant's motion for summary judgment should be granted.
The plaintiff, Nicole Gaudet, seeks compensation for personal injuries that she suffered at Joel Barlow High School while working for the public schools of Easton, Redding and Region 9. She was selling tickets for a soccer game on September 20, 1997, when a partially constructed ticket booth fell on her and injured her. The ticket booth was being constructed by the Joel Barlow Football Booster Club with the authorization of the high school and the board of education. The construction had begun just three days earlier on September 17, 1997. The booster club was a nonprofit club composed of team members' parents who were interested in supporting the school football team. The members of the booster club were not receiving any compensation for their efforts. The booster club, in support of the football team, was constructing a ticket booth and CT Page 15852 concession stand. The materials for the snack bar were to be donated by the booster club, while the materials for the ticket booth were to be donated by the high school.
The defendant, asserting a special defense based on the Volunteer Protection Act (VPA), 42 U.S.C. § 14501 et seq., has moved for summary judgment. "A motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989). "[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v. Double A Transportation,Inc., 248 Conn. 21, 24, 727 A.2d 204 (1999).
 A
The Volunteer Protection Act was enacted to protect volunteers from incurring liability for accidents that occur while volunteering for a nonprofit organization or governmental entity. The purpose of the Act is "to promote the interests of social service program beneficiaries and taxpayers and to sustain the availability of programs, [and] nonprofit organizations . . . that depend on volunteer contributions. . . ."42 U.S.C. § 14501 (b). Congress made it abundantly clear that the impetus for the Act was to limit the liability of volunteers in order to increase the willingness of volunteers to offer their services. "The willingness of volunteers to offer their services is deterred by the potential for liability actions against them; as a result, many nonprofit, public and private organizations . . . have been adversely affected by the withdrawal of volunteers from boards of directors and service in other capacities." 42 U.S.C. § 14501 (a). Furthermore, Congress emphasizes that the "contributions of these programs to their communities is thereby diminished, resulting in fewer and higher cost programs than would be obtainable if volunteers were participating." Id. Congress found that the contribution of such volunteers to their communities was diminishing due to the fear of liability and that liability reform was the appropriate solution to protect volunteers. CT Page 15853
 B
Immunity for charitable works is not a new concept in American legal history. However, the focus of the immunity has changed from protecting the charity itself to protecting the volunteer who is helping the charity. McDonald v. Massachusetts General Hospital, 120 Mass. 32 (1876) (first time in American case law that charity was held not liable for tortious activity because of its charitable status). From the late part of the nineteenth century through the first half of the twentieth century, the doctrine of charitable immunity was recognized by most courts in the United States. Charitable immunity, unlike volunteer immunity, insulates the charity from liability while the volunteer remains liable. President and Directors of Georgetown College v. Hughes,130 F.2d 810 (D.C. Cir. 1942) (courts began to question why charitable hospitals are immune while doctors, who work for very same hospitals, free of charge, are left liable for damages). In contrast, under the VPA, the volunteer is protected while the nonprofit organization or governmental entity may still be held liable. 42 U.S.C. § 14503 (d) (4).
The VPA preempts Connecticut state law via the commerce clause of the United States Constitution.[1] The Act preempts the laws of any state except for those laws that offer more immunity for a nonprofit or governmental entity than the VPA. A state must enforce the VPA unless its legislature follows § 14502(b), which outlines how a state can enact nonapplication of the VPA. If a state chooses to enact nonapplication of the VPA, only cases where all parties to the litigation are citizens of that state will be exempted. Further, the legislation enacted must cite the VPA, declaring that it does not apply. 42 U.S.C. § 14502 (b).
Connecticut already limits liability for some volunteers and charity workers. See, e.g., General Statutes § 52-557m (granting immunity from liability to directors, officers and trustees of nonprofit tax-exempt organizations); General Statutes § 10-235 (granting indemnification to certain volunteer in damage suits, including cost of litigation); General Statutes § 52-5571 (granting immunity from liability of nonprofit organizations or corporations that distribute donated food). The VPA will now preempt such statutes when it offers more immunity than such statute.[2]
 C
The next issue is whether the present case falls within the parameters of the Volunteer Protection Act. The application of the statute is found in § 14503. In order for the VPA to apply to the case at hand, the defendant must be a volunteer, working for a nonprofit organization, CT Page 15854 within the scope of his responsibilities, and not subject to any exclusion enumerated by the VPA. Therefore, in order for the defendant's motion for summary judgment to be granted, there must be no material issue of fact as to whether the defendant was a volunteer, working for a nonprofit organization, and acting within the scope of his responsibilities.
The evidence indicates that the defendant was a volunteer. The VPA defines volunteer as "an individual performing services for a nonprofit organization or a governmental entity who does not receive: (A) compensation (other than reasonable reimbursement or allowance for expenses actually incurred); or (B) any other thing of value in lieu of compensation, in excess of $500 per year, and such term includes a volunteer serving as a director, officer, trustee, or direct service volunteer." 42 U.S.C. § 14505 (6). (see endnote four). To establish the fact that he was working as a volunteer without compensation the defendant offered into evidence the affidavit of Nelson Quimby, the principal of the high school in 1997, the affidavit of Paul Goldstein, the President of the booster club, and his own affidavit. (Defendant's Memorandum, Exhibit B, Affidavit of Nelson Quimby [Quimby Affidavit], ¶¶ 9, 10; Defendant's Memorandum, Exhibit C, Affidavit of Paul Goldstein [Goldstein Affidavit], ¶ 7; Defendant's Memorandum, Exhibit A, Affidavit of John Braca [Braca Affidavit], ¶¶ 9, 10.) All three affidavits serve as evidence that members of the booster club who provided assistance in the construction of the ticket booth or concession stand were not compensated and were volunteers. The plaintiff has not offered any evidence to the contrary. It is well settled that "the party opposing [summary judgment] . . . must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Riverav. Double A Transportation, Inc., 248 Conn. 24; see also Practice Book § 17-46. The plaintiff has not met this burden. The plaintiff has offered no evidence that the booster club workers received any compensation.
The evidence indicates that the booster club was a nonprofit organization. Nonprofit organization is defined as: "any not-for-profit organization which is organized and conducted for public benefit and operated primarily for charitable, civic, educational, religious, welfare, or health purposes and which does not practice any action which constitutes a hate crime. . . ." see 42 U.S.C. § 14505 (4)(B). (see endnote four). To establish the fact that the booster club is a nonprofit organization, the defendant has offered into evidence Quimby's affidavit, Goldstein's affidavit and Braca's affidavit. All three affidavits are evidence that the booster club was a nonprofit organization and operated for the purpose of supporting the football program. The plaintiff has not offered any evidence to the contrary. In CT Page 15855 fact, the plaintiff offered deposition testimony that supports the defendant's assertion that the booster club was a nonprofit organization. While deposing the treasurer of the booster club, the plaintiff requested any tax forms the booster group was required to file with the IRS for the years 1997-98. The treasurer was not aware that the booster club had ever filed, or been required to file tax returns. (Plaintiff's Opposition to Summary Judgment, Exhibit D, Deposition of Bennie Wallace, p. 10.) The treasurer's testimony supports the defendant's assertion that the booster club was a nonprofit organization.
The evidence indicates that the booster club was authorized by the school and the board of education to construct the ticket booth and concession stand and that, therefore, the defendant was acting within the responsibilities of a volunteer for the booster club. The affidavit of the principal of the high school at the time of the injury, Nelson Quimby, states that "[u]pon receiving the plans and the site for the buildings, I recommended to the Board of Education that the project be undertaken and completed by the [booster club]. Upon information and belief the Board of Education approved the project and the work was completed by the [booster club]." (Quimby Affidavit, ¶¶ 7-8.) The defendant has offered into evidence the testimony of the school principal that the school and school board approved the construction of the concession stand and ticket booth by booster club. The plaintiff has offered no evidence to the contrary. Therefore, there remains no issue of fact as to whether the defendant's responsibilities as a volunteer to the booster club included working on the concession stand.
There remains no material issue of fact as to whether the defendant was a volunteer for a nonprofit organization completing tasks within the responsibility of a volunteer. Accordingly, the defendant's motion for summary judgment should be granted.
THIM, J.