**John WARD, Plaintiff,**

v.

**HOUSATONIC AREA REGIONAL TRANSIT DISTRICT, et al. Defendants.**

**No. CIV. A. 398CV2467JCH.**

United States District Court, D. Connecticut.

Aug. 3, 2001.

ful suspensions of his bus riding privileges and the substandard services he received from the defendants. The defendants, Housatonic Area Regional Transit District ("HART"), and its individually named employees,[1] seek summary judgment on all counts of the complaint.[2] The plaintiff also seeks summary judgment as to all counts of the complaint, excluding Count One.

The defendants argue that 1) the plaintiff has not asserted a cognizable property interest in his bus privileges and so is not entitled to due process and if he is, he was given all the process that was due; 2) the defendants did not retaliate against the plaintiff based on his exercise of his free speech rights, but rather suspended him for his disruptive behavior; 3) HART's rules and regulations regarding the right to suspend passengers are not void for vagueness; 4) suspension of Ward's riding privileges did not violate his equal protection rights; 5) Ward's allegations do not rise to the level of "extreme and outrageous behavior" or "unreasonable conduct" that would support a claim of intentional or negligent infliction of emotional distress; 6) the plaintiff has not stated a claim for false imprisonment, "false statements," or "union thuggery." The HART defendants also assert immunity from all the claims, and HART asserts that it cannot be held liable for the claims under a theory of municipal liability.

The plaintiff, in turn, argues that all of his claims are legally supported and factually without issue and that summary judgment should be granted on all claims, excluding Count One.

John Ward, Danbury, CT, Pro se.

Mark J. Sommaruga, Nicole Alexandra Bernabo, Sullivan, Schoen, Campane & Connon, Hartford, CT, for Defendants.

HALL, District Judge.

The plaintiff, John Ward ("Ward"), brought suit against the defendants, asserting numerous claims under 42 U.S.C. § 1983, various provisions of the Connecticut Constitution, various state statutes and under the common law seeking injunctive relief and damages for the alleged unlaw-

---

1. In this ruling, unless otherwise indicated, "HART" refers to the company defendant and "HART defendants" refers to all of the individual employees named as defendants. The court notes that the plaintiff has dropped his complaints as to defendant Mike Gillotti.

2. The complaint which is the subject of these summary judgment motions is the second amended complaint (Dkt. No. 55).

For the reasons stated below, the plaintiff's motion for summary judgment (Dkt. No. 65) is DENIED and the defendants' motion (Dkt. No. 62) is GRANTED in part and DENIED in part.

This case is brought by Ward pro se. Ward originally filed this suit in the Superior Court of Connecticut on December 8, 1998. HART and the HART defendants then removed the action to federal court on December 18, 1998. In response to a motion to dismiss filed on January 4, 1999 (Dkt. No. 6), Ward filed an amended complaint (Dkt. No. 25).

This court issued a ruling on the defendants' second motion to dismiss (Dkt. No. 19) on September 30, 1999 (Dkt. No. 43), granting the motion in part and denying the motion in part. Specifically, the court granted the defendants' motion to dismiss as to Ward's First Amendment claim contained in Count Thirteen of the Amended Complaint in which Ward alleged that his speech was chilled by being told he could not question the decisions of the executive director of HART. The court found that Ward did not sufficiently allege an adverse action in response to the exercise of his free speech rights. The court dismissed Ward's claims based on Article First, §§ 1,2,8, 20 of the Connecticut Constitution, because those provisions do not provide for a private cause of action. The court dismissed Ward's claims in Count Fourteen and Nineteen brought under the Freedom of Information Act because the court lacked subject matter jurisdiction, Ward having failed to exhaust his administrative remedies. The court dismissed Ward's claims in Counts Three, Nine, and Sixteen in which Ward alleged violation of his rights under the Americans with Disabilities Act of 1990. The court found that Ward's accommodation claims under the ADA failed because obesity is not listed as a physical impairment under the Act. Sec-

ond, the court held that Ward had not made out a claim for being "regarded as disabled" because he had not established a causal connection between HART or the HART defendants perceiving him as being limited in a major life activity and HART and the HART defendants treating him as a threat. Finally, the court dismissed Ward's claims for false imprisonment and union thuggery because he had not named Amorando as a defendant and because Ward failed to allege that defendant Gillotti had a duty to protect him.

The court granted Ward's motion to amend the Amended Complaint and HART and the HART defendants' motion to strike those parts of the amended complaint which the court had dismissed in its ruling on the motion to dismiss (Dkt. No. 50). Ward then filed his Second Amended Complaint on December 5, 2000 (Dkt. No. 55). The Second Amended Complaint is the subject of the cross-motions for summary judgment addressed in this ruling.

HART is a regional transit district created under Conn.Gen.Stat. § 7–273b and is a provider of public bus services. HART provides both local bus services within Connecticut, as well as operates a shuttle bus between Connecticut and New York. Besides fixed route buses which run along scheduled routes, HART provides "Sweet-HART" bus services which can be reserved in advance and are primarily used for transporting the elderly and disabled. Defendant Troy Boyd is a bus driver currently employed by HART. Defendant Andrew Ziegler was HART's director of operations until August 1999. Defendant Richard Cockfield is HART's operations supervisor. Defendant Eric Bergstraesser is HART's executive director. Defendant Beverly Durante is HART's personnel administrator. Defendant "John Doe" (Thomas Felker) is a bus operator and defendant Roxanne Erdogan a/k/a Rox-

anne Torres is a trolley operator; both are currently employed by HART.

Ward, who regularly utilizes HART bus services, brought claims against HART and the HART defendants based on an ongoing and lengthy dispute between himself and the defendants. This dispute has, at various times, resulted in HART suspending Ward's right to use its bus services and has caused the Danbury Police Department to become involved.

Ward filed a number of complaints with HART during 1997 about its bus services, specifically regarding drivers who had not picked him up at designated bus stops. Among the drivers that Ward filed complaints about was defendant Troy Boyd. HART responded to these complaints in writing and, at times, provided Ward with free bus passes. In 1998, Ward requested, through FOIA, to see the records and files of HART drivers. In addition, Ward continued filing complaints during 1998. Specifically, he complained a number of times about Boyd refusing to pick him up at bus stations.

One of these incidents occurred on July 7, 1998, when Boyd refused to allow Ward to board his bus. The parties disagree about why Ward was refused bus services on that day. A second incident occurred on September 19, 1998, when Ward confronted Boyd after Boyd had passed him at a stop but did not pick him up. The incident escalated into a shouting match between Ward, Boyd and a second driver, Felker. There is disagreement as to what was said, but both parties agree that Boyd and Felker called the police and an officer was dispatched to the scene but no arrest was made. As a result of this incident, HART barred Ward from riding on buses operated by Boyd. HART has a written policy which provides that the company retains the right to deny bus services to passengers who

act in a "manner threatening to the safety of the drivers or passengers" or who engage in "seriously disruptive or objectionable behavior." Defendants' Local Rule (9)(c)(1) Statement, (Dkt. No. 64), attachment J. Ward spoke on the phone with Ziegler about the incident and, as a follow-up to their conversation, Ward faxed Ziegler a letter entitled "Complaint and Petition for Redress of Grievance" (referred to by both parties as the "Plato Letter"). The letter included a lengthy quote of Plato. Ward claims in his Facts Not in Dispute, (Dkt. No. 74 at 9), that the letter expressed tenants of his religious beliefs, but the HART defendants contend in their Local Rule 9(c)(1) Statement, (Dkt. No. 64 at ¶ 15), that they viewed the letter as threatening.

On October 2, 1998, Ward was involved in a verbal altercation with Torres. The incident occurred on the bus that Torres was operating. Torres pulled the bus over and involved her supervisors, Cockfield and Ziegler. On November 25, 1998, Boyd filed a complaint with his supervisors about an attempt by Ward to board his bus in violation of the ongoing suspension.

On November 27, 1998, Ward brought a notice of intent to sue to the Kennedy Avenue bus stop in order to give it to union president Amorando. After the letter was exchanged, Amorando followed Ward and boarded the bus behind him. HART claims that Ward and Amorando had a short conversation on the bus while Ward was waiting for the bus to take him home. Ward claims, however, that he was not allowed off the bus as Amorando blocked the exit.

An additional incident occurred on December 3, 1998, when Ward was accused, in a driver comment form written by driver Kelly Legg, of referring to her as "he/she/it, whatever." The next day, HART suspended Ward from riding on all fixed

route buses. This suspension lasted until March 17, 1999. During the suspension, Ward remained able to make reservations for bus services on SweetHART buses. Ward had purchased a "fast pass" (an advance monthly ticket) for $19.50 for use on the fixed route buses and the Sweet-HART buses during the month of December.

Upon resumption of Ward's full riding privileges, new disputes arose. On April 24, 1999, Torres complained that Ward pounded on her bus window, although Ward asserts that he knocked on the window to get her attention so she would open the doors and he could board the bus. In May, Ward submitted a complaint about Boyd, which was responded to by Bergstraesser. In June, Ward submitted a complaint about an incident that occurred on June 1, 1999. Ward left his gym bag on Boyd's bus, then went outside the bus to wait until it was scheduled to leave. Boyd told Ward to remove his bag and when Ward did not, Boyd threw the bag in a garbage can on the street. HART issued an apology to Ward after this incident. During the remainder of the summer of 1999, Ward submitted further complaints regarding Boyd's failure to pick him up at designated bus stops and Torres submitted further complaints about Ward's behavior.

In February of 2000, Ward became involved in a verbal altercation with driver Legg in which she later accused him of swearing at her and calling her an idiot. Yastremski contacted Ward, by mail and by telephone, in order to investigate the incident, but Ward did not respond to his inquiries. In March of 2000, HART suspended Ward from bus services indefinitely. However, Ward continued to ride the buses because the Danbury police refused to enforce the suspension.

HART has received complaints regarding other passengers and has suspended a few passengers who assaulted drivers or spat on other passengers. HART also received complaints about Boyd from other passengers, and he was issued verbal warnings and was suspended briefly. Finally, HART also allegedly received complaints from other passengers regarding Ward's behavior on the bus.

HART's written policy includes a description of an appeals process that a passenger can access if his riding privileges have been suspended. It is not clear from the record before the court whether this policy is posted at the bus stops or on the buses, but it does appear to be contained in booklets available to the public. Ward's Deposition at 215–217. The parties disagree over whether HART ever informed Ward of the availability of an appeal or whether Ward requested an appeal and the request was ignored.

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P.56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor. *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Graham,* 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton* 202 F.3d at 134. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *See Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000).

The HART defendants, Troy Boyd, Andrew Ziegler, Richard Cockfield, Eric Berstraesser, Beverly Duranted, Robert Yastremski, Tom Felker, Anthony Amorando and Roxanee Torres, seek summary judgment for the claims brought under 42 U.S.C. § 1983, which seeks damages against them in their individual capacities on the grounds that they have qualified immunity against such claims.[3] In order to prevail on an action for damages under § 1983 against a government official, the plaintiff must show that the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Thus, the inquiry becomes first, whether the plaintiff alleges a violation of a constitutional right and then second, whether that right was "clearly established" at the time of the alleged violation. *Gabbert,* 526 U.S. at 290, 119 S.Ct. 1292. After this test is met, the qualified immunity defense "protects a

government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of his challenged act." *Menon v. Frinton,* 2001 WL 359499 *2 (D.Conn.2001) (citing *Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995)).

The Supreme Court in recent years has established that the preferred approach to addressing the issue of qualified immunity is to first determine whether the plaintiff has actually alleged the deprivation of a right and, only after the existence of such a right is established, move to the second question of whether the right was "clearly established." *County of Sacramento v. Lewis,* 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *but see Horne v. Coughlin, III,* 191 F.3d 244 (1999) (holding that the Supreme Court did not intend to make a blanket pronouncement that such a procedure must be followed in all cases, and finding that in many circumstances, avoiding the first constitutional inquiry would be the sounder decision). In this case, because Ward brings claims against HART, which is not covered by the qualified immunity doctrine, and seeks injunctive relief for which qualified immunity is not a defense, the court must first analyze whether Ward alleges any viable constitutional claims and, if so, will then proceed to the second prong of the immunity test to determine if the individual defendants are shielded from liability for money damages.

HART asserts that it cannot be held liable for Ward's claims because Ward has failed to allege that his rights were violated pursuant to an official policy or custom of the company. A municipality can be held liable for a constitutional violation asserted in a claim under 42 U.S.C. § 1983, but the liability cannot rest on a

---

3.  These claims appear in Counts One, Three through Six, Eleven, Twelve, Fifteen and Twenty–Four.

theory of respondeat superior. Instead, for a municipality to be liable under 42 U.S.C. § 1983, the act committed which caused the violation of rights, must have been done pursuant to an official policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "The official policy must be the 'moving force of the constitutional violation.'" *Goldberg v. Town of Rocky Hill*, 973 F.2d 70 (2d Cir. 1992) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). In order for the municipality to be held liable, the injury must have been caused by one of its lawmakers or "by those whose edicts or acts may fairly be said to represent official policy." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2000)(quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 121–22, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)(plurality opinion)). "Where the contention is not that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified but rather that they were taken or caused by an official whose actions represent official policy, the court must determine whether that official had final policy-making authority in the particular area involved." *Jeffes*, 208 F.3d at 57. The issue of HART's liability under this standard will be addressed along with the defense of qualified immunity asserted by the individual defendants.

Under 42 U.S.C. § 1983, an individual may bring a claim for damages against another who, acting under the color of state law, deprived him of a federal right. *Richardson v. McKnight*, 521 U.S. 399, 403, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997). Thus, "to prevail on a section 1983 claim, a plaintiff must prove that the challenged conduct was attributable at least in part to a person acting under color of state law, and that the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 136–37 (2d Cir.1999) (citing *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993)).

## 1. Federal Due Process

HART and the HART defendants seek summary judgment on Ward's claims, set out in Counts One, Three, Six, Eleven, Fifteen and Twenty–Four of the Second Amended Complaint ("Complaint"), that HART and the HART defendants violated his due process rights. Specifically, HART and the HART defendants argue that Ward does not have a property interest in having access to bus service, and even if he could assert such an interest, HART afforded him all the process that was due. Ward seeks summary judgment on this issue, claiming that, when HART suspended him from regular bus service, it deprived him of his property interest without providing him with adequate due process. In addition, Ward claims that HART violated its obligation to provide him with bus service as required by common carriers. Finally, Ward asserts a specific property interest in his "fast pass" from December 1998.

For the reasons set out below, the court grants HART and the HART defendants' motion for summary judgment on the due process claims alleged in Counts One, Three, Six, Eleven, Fifteen and Twenty–Four. The court is unable to find that Ward has a property interest in riding the bus and, therefore, holds that he was not entitled to due process regarding his bus suspension. To the extent that Ward has an interest in the $19.50 he spent on the fast pass for the month of December, the court finds that Ward waived any right to a refund. Because the court does not find a violation of a cognizable constitutional interest, the court does not address further the issues of immunity or municipal

**348**

liability. *See e.g., Gabbert,* 526 U.S. at 290, 119 S.Ct. 1292.

## A. Property Interest

■ To allege a violation of due process under the Fourteenth Amendment, a person must establish that he was deprived of a liberty or property interest. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Here, Ward asserts a property interest. However, not all deprivations rise to the level of a property interest. "A property right will not be recognized as cognizable under the due process doctrine if the person claiming the right has a mere abstract need or desire for, or unilateral expectation of, the claimed right. Rather, the person claiming the right must have a 'legitimate claim of entitlement.'" *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 130 (2d Cir.1998) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701).

Whether an individual can claim a property interest in public transportation services is a close question. The Supreme Court has recognized that individuals do have certain property interests in receiving some government and municipal services. In *Memphis Light, Gas and Water Division v. Craft,* the Court held that individuals have a property interest in receiving public utilities services, such as gas and electric services. 436 U.S.I., 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). The Court based its holding in *Memphis Light* on a Tennessee state law which obligated utility companies to provide service without discrimination. *Id.* at 11, 98 S.Ct. 1554. Some lower courts have extended this holding to apply to other services, such as water and sewage. *See e.g., Frates v. City of Great Falls,* 568 F.Supp. 1330 (D.Mont.1983).

The Supreme Court has also found that drivers possess a property interest in their licenses. *See Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The Court recognized in that case that "once licenses are issued, ..., their continued possession may become essential in the pursuit of a livelihood." *Id.* at 539, 91 S.Ct. 1586.

The Second Circuit has indicated that, when applying the entitlement test, a court must look to "existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection ...." *DLC Mgmt. Corp.v. Town of Hyde Park,* 163 F.3d 124 (2d Cir.1998) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701). Ward is unable to point to the existence of any state law which would allow him to assert a property interest in fixed route bus service. The state statute cited by Ward, Conn.Gen.Stat. § 7–273b *et seq,* does provide for the formation of transit districts, like HART, and grants them discretionary control over services, but no where does that statute or any other establish a property interest for individuals in any such services.

## B. Duties of a Common Carrier

■ Alternatively, Ward alleges that HART is a common carrier, and, as such, is required to provide him with a certain quality of services and cannot simply refuse to provide him with such service. Ward asserts this claim based on HART's status as a common carrier under 49 U.S.C. § 14101 and under state law. Because 49 U.S.C. § 13506(b), the jurisdictional provision of the federal statute dealing with interstate transportation, exempts bus companies like HART which provide transportation within a municipality or be-

tween contiguous municipalities,[4] Ward cannot assert a due process claim against HART based on an entitlement arising out of 49 U.S.C. § 14101.

Admittedly, there is Connecticut case law suggesting a wider definition of a common carrier. In *Hunt v. Clifford*, the Supreme Court defined a common carrier of passengers as one that "undertakes to carry for hire, indiscriminately, all persons who may apply for passage, provided there is sufficient space or room available and no legal excuse for refusing to accept them." 152 Conn. 540, 541, 209 A.2d 182 (1965). However, while Connecticut courts have recognized that the designation of one as a common carrier does give rise to a higher degree of care regarding the safety of passengers, this court was unable to find, beyond the statement in *Hunt*, any case law to support the proposition that a plaintiff could bring a claim against a common carrier for refusing service. In fact, cases from other states indicated that common carriers are able, by law, to enforce rules and regulation even if that means the deprivation of service to individual passengers. *See, e.g., Reasor v. Paducah & Illinois Ferry Co.*, 152 Ky. 220, 153 S.W. 222 (1913) ("But this duty to serve the public does not deprive the carrier of the right to make reasonable and proper rules for the conduct of its business, among which may be enumerated the right to deny passage to or to exclude from its conveyance one already a passenger" at 223).

Therefore, Ward has no basis in either statutory law or common law to assert a claim against HART for denying him bus service based on its designation as a common carrier. Because Ward does has not asserted a viable property interest, he is not entitled to any due process; entitle-

ment to process is contingent on there being a deprivation of a right. Because Ward has not alleged a violation of a constitutional right, the court need not address the issue of immunity or municipal liability. *See e.g., Gabbert*, 526 U.S. at 290, 119 S.Ct. 1292. HART and the HART defendants' motion for summary judgment is granted as a matter of law with respect to Ward's federal due process claims, claims under § 14101 and under the common law of common carrier, found in Counts One, Three, Six, Eleven, Fifteen and Twenty–Four.

## C. Interest in the "Fast Pass"

■ Ward also claims, in Counts Three, Eleven, and Fifteen, a property interest in his "fast pass" for December 1998, which he purchased in advance for $19.50 and which he was unable to use on fixed route buses due to his partial suspension. HART argues that the purchase of tickets does not create a property or contract right, and that Ward only had a "qualified ability to utilize HART services, conditioned upon him conforming his behavior to HART's rules of conduct." Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Memo"), at 10 (Dkt. No. 63). In addition, HART points out that Ward never sought a refund and that he was still able to use the fast pass for SweetHART bus services.

HART relies on a string of cases to support its argument that tickets constitute "revocable licenses" and that tickets for services do not create a property interest in the purchaser. *Id.* at 9. However, the cases cited deal primarily with season ticket holders who wish to assert a proper-

---

4. HART provides service within Connecticut to the contiguous towns of Danbury, Brookfield, Bethel and New Milford, as well as operates a shuttle to Brewster, New York, which borders Danbury.

**350**

ty interest in their right to renew their tickets for the following year. The courts have held that there is no property interest in an option to renew season tickets for the following season. *See, e.g., In re Harrell,* 73 F.3d 218, 219 (9th Cir.1996). However, in this case, Ward held a ticket that was valid for immediate use, and he was suspended after he purchased it and before it expired.

Because Ward purchased the bus pass, he clearly has some interest in the money he spent. However, Ward's interest is distinguishable from more substantial property interests, such as an interest in a license. *See, e.g., Bell,* 402 U.S. at 539, 91 S.Ct. 1586. Licenses have an unlimited duration, provided that they are renewed in a timely fashion. Only when the holder violates the terms of the license can it be revoked. In contrast, Ward's bus pass was scheduled to terminate at the end of December, even if he had not been suspended.

The fact remains, however, that Ward does have a property interest in at least some portion of the $19.50 he paid for the fast pass. *See Simmons v. New York State Lottery Commission,* 1988 WL 52219 (E.D.N.Y.)(holding that the plaintiff did have a property interest in the one dollar with which he purchased a lottery ticket when he purchased the ticket without knowing the lottery contest ended the prior day). Because of this interest, this court would normally make an inquiry into the extent of the deprivation and what process was afforded to determine if there had been a due process violation. However, to the extent that Ward has a limited property interest in some portion of the bus pass, he waived that interest when he indicated that he did not want a refund. Ward Deposition at 156. *See, e.g., Blum v. Schlegel,* 18 F.3d 1005, 1016 (2d Cir.1994) (holding that a professor waived any property interest that he had in a timely tenure evaluation when he agreed not to seek review until the following year).

### 2. First Amendment Claims

HART seeks summary judgment on Counts One, Four, Five, Twelve, Thirteen, Fifteen and Twenty–Four of the complaint which allege that HART and the HART defendants violated Ward's First Amendment rights. In Counts One, Twelve, Fifteen and Twenty–Four, Ward alleges that HART and its drivers failed to pick him up and eventually suspended his riding privileges in retaliation for his exercise of free speech in filing complaints against HART and its drivers. In Count Four, Ward alleges that HART and the HART defendants retaliated against him for sending his "Plato letter" which was an expression of his religious creed. In Count Five, Ward alleges that HART's "objectionable behavior" standard for ejecting or suspending a passenger from bus services is void for vagueness. Finally, in Count Thirteen, Ward alleges that his free speech rights were "chilled" because he was told that he could not question decisions of the Executive Director.

The court first addresses the retaliation claims and finds that Ward has asserted a viable claim for retaliation under the First Amendment. The court then proceeds to analyze the HART defendants' claim for immunity and whether HART has municipal liability. The court finds that the individual defendants are not shielded by immunity. The court finds that HART can be held liable for the claims in Counts Four, Twelve, Fifteen and Twenty–Four but not for the claim in Count One. The court then finishes the inquiry by determining whether there are any issue of material fact and, finding that there are, denies HART's motion for summary judgment as to Count One as to the individual

defendants and as to Counts Four, Twelve, Fifteen and Twenty–Four as to HART and the HART defendants. The court grants HART's motion for summary judgment as to Count One as to HART and Count Thirteen as to HART and the HART defendants.

The court then moves to Ward's claim, contained in Count Five, alleging that HART's suspension policy is void for vagueness.

## A. Retaliation

HART argues that its actions were "not motivated by any desire to interfere with the plaintiff's legitimate constitutional rights (or in retaliation for the plaintiff's views) but rather in response to the plaintiff's action." Defendant's Memo, 14–15. The suspensions, HART argues, were a result of Ward's threatening and disruptive behavior and not his speech activities. In addition, HART argues that it was unaware that the Plato letter expressed a religious belief and responded to the letter because of its threatening tone. Finally, HART argues that Ward was on notice as to the meaning of HART's policies regarding disruptive behavior and that government agencies have been given some latitude when promulgating regulations so that they are able to encompass a wide range of situations.

### i. Analysis of the Constitutional Claim

■ In order to assert a claim for retaliation for the exercise of free speech under § 1983, a plaintiff "must show that his activity was protected by the First Amendment and that the defendant's conduct complained of was in response to that protected activity." *Posr v. Court Officer Shield,* 180 F.3d 409, 418 (2d Cir.1999). The plaintiff must persuade the jury that the defendant's action was motivated by retaliatory intent. *Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Industrial Development Agency,* 77 F.3d 26, 31 (1996).

■ Ward asserts in Count One of his complaint that he was denied a ride on defendant Boyd's bus because he had complained to HART's management about Boyd the previous day. He then goes on, in Counts Twelve, Fifteen and Twenty–Four, to state that the suspensions he received were in retaliation for the complaints he filed and the statements he made on the buses. Clearly, any written or oral complaints that Wade filed with HART were protected speech, as was any speech he engaged in on the streets of Danbury.[5]

The court then moves to the issue of whether the actions of HART and the HART defendants were motivated by retaliatory intent. HART and the HART defendants deny this was their motivation and rely on affidavits from bus company employees to support this assertion. HART also relies on the fact that it responded positively to Ward's complaints, even providing him with bus passes. However, HART's positive responses to Ward's complaints do not defeat the plaintiff's opposition to the motion for summary judgment, setting forth facts from which a jury could infer retaliation. *Gorman–Bakos v. Cornell Cooperative Extension of Schenectady County,* 252 F.3d 545, 555 (2d Cir. 2001) (reversing lower court's finding and

---

5. The court recognizes that a bus may not be considered a tradition public forum, *see Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (banning political advertisements in city-operated transit vehicles), and that Ward's speech on HART buses may not be protected activity. However, Ward is claiming that his exercise of his speech rights when writing complaints to HART resulted in his suspensions, not any speech he engaged in on the bus.

holding that defendants may have responded positively to the plaintiffs' calls for change in the 4–H program yet still sought to expel them from the program because "of the challenges with which they presented the defendants").

HART also asserts that other passengers have complained about bus service and drivers and that HART's responses have been similar to the responses, by telephone and email, that they issued to Ward. However, this is inapposite. Ward is claiming that his complaints prompted retaliatory action beyond the normal response to complaints. Thus, the court finds that Ward has asserted a viable constitutional claim.

ii. Immunity and Municipal Liability

■ The individual defendants claim immunity against Ward's First Amendment Claims. Because Ward has alleged a violation of a constitutional right, the court moves to the second prong of the qualified immunity test to determine whether the right was clearly established at the time of the violation. The factors used to determine if a right is clearly established are: "First, whether it is 'defined with reasonable specificity'; second, whether 'the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right'; third, 'whether in light of preexisting law the unlawfulness of the defendant official's actions is apparent.'" *Charles W. v. Maul,* 214 F.3d 350 (2d Cir.2000) (quoting *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989)). This does not mean that the specific action in question had to have been held unlawful but that in the light of existing law, the unlawfulness would be clear. *Wilson v. Layne,* 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

■ The court could find no specific cases holding that a passenger on public transportation cannot be ejected for retal-iatory reasons because he files complaints against the transit company. However, the law on retaliation in the free speech context generally is well established in the Second Circuit. *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted) (holding that when trying to determine if a right is clearly established that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right, [but that this] is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."). Clearly, HART management knew that it could not suspend Ward from public buses merely because he complained to them about drivers and services. While the defendants may present a plausible argument that they believed they could suspend a passenger for being verbally abusive on the bus, here the factual dispute is over whether the HART defendants suspended Ward because he insisted on lodging complaints against the company. Therefore, the court finds that the right to be free from retaliatory actions of a transit company was clearly established for the purposes of the immunity analysis.

■ Next, the court moves to whether the defendants' conduct was objectively reasonable. In a "motion for summary judgment asserting a qualified immunity defense in an action in which an official's conduct is objectively reasonable but an unconstitutional subjective intent is alleged, the plaintiff must proffer particularized evidence of direct or circumstantial facts ... supporting the claim of an improper motive in order to avoid summary judgment." *Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995). While the court recognizes that Ward has not offered substantial evidence to support his claim, given his pro

se status, and the particularized circumstantial evidence presented regarding the timing of his complaints and suspensions, we believe that Ward meets this final hurdle of the qualified immunity test. Therefore, the HART defendants cannot prevail on the record before the court on their defense of qualified immunity as to the First Amendment retaliation claims contained in Counts One, Four, Twelve, Fifteen and Twenty–Four.

▮▮ HART claims that it cannot be held liable for violations of Ward's First Amendment rights. HART argues that Ward's allegations are for actions "made by persons without final policy-making authority with respect to the alleged violation of plaintiff's constitutional rights." Defendants' Memo at 46. The court agrees with regard to the allegations against Boyd, contained in Count One. Clearly, even if Boyd prevented Ward from riding out of retaliation for complaints lodged against Boyd by Ward, there was no official policy allowing such retaliation. Further, Boyd did not have policy-making authority in that area.

Regarding the other counts, because there was no official policy to retaliate against complaining passengers, the court must determine whether the official who took action against Ward had official policy-making authority. *Jeffes*, 208 F.3d at 57. The court must first look to state law. Clearly, as stated earlier, Conn.Gen.Stat. § 7–273b *et seq*, grants to the individual transit districts all decision-making regarding rules, regulations and services. In his affidavit, Eric Bergstraesser, HART's executive director, states that he is responsible for overseeing all services provided by HART and that an inherent part of [his] duties includes ensuring that HART provides safe and effective transportation to HART's customers .... Defendant's Local Rule 9(c)(1) Statement (Dkt.No.64), Bergstraesser's Affidavit, ¶ 3. He then states that he ordered Ward's suspensions. Clearly, Bergstraesser has the authority to suspend passengers and to make policy regarding how the HART rules and regulations are implemented. As such, HART cannot assert that it cannot be held liable for Ward's First Amendment claims based on Bergstraesser's alleged conduct. Therefore, the court finds that HART can be held liable for claims under Counts Four, Twelve, Fifteen and Twenty–Four.

### iii. Summary Judgment Inquiry

▮▮ Because Ward's claims in Counts One, Four, Twelve, Fifteen, Twenty–Four against the HART defendants survive the tests for qualified immunity and because HART can be held liable for Counts Four, Twelve, Fifteen and Twenty–Four, the court must determine whether there exists any material issues of fact as to those claims. HART and the HART defendants make a strong argument that the disruptive behavior that Ward was exhibiting on the bus led to his suspensions. While this may be true, the court finds that the actual nature of Ward's behavior on the bus, whether Ward's behavior escalated over time, as claimed by HART, and whether HART suspended Ward from bus service because he was disruptive or because he filed a series of complaints, are questions of fact that should be decided by a jury. Similarly, whether HART perceived Ward's "Plato letter" as a threat or whether it understood it as an expression of religious belief is a question of fact and cannot be decided on a motion for summary judgment.

In addition, the court believes there is a dispute over what Ward said to the various bus drivers and in what manner he engaged them, and the court is not inclined, therefore, to find that any of Ward's remarks fit in the category of fighting words,

as defined in *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942), and as suggested by HART's memo regarding this motion (Dkt. No. 63) at 22–23.

Because there are genuine issues as to material facts in dispute and the HART defendants cannot assert qualified immunity as to the retaliation claims in Counts One, Four, Twelve, Fifteen and Twenty–Four, their motion for summary judgment on those claims is denied. HART's motion for summary judgment as to the parts of Counts Four, Twelve, Fifteen and Twenty–Four pertaining to the First Amendment claims against HART in its capacity as a municipal entity is also denied because there are genuine issues of fact in dispute. HART's motion for summary judgment as to Count One is granted because HART cannot be held liable for that claim. To the extent that the Ward's motion for summary judgment addresses these claims, it is denied.

Finally, the court grants HART's motion for summary judgment as to Count Thirteen. The court dismissed this claim in its previous ruling on defendant's motion to dismiss (Dkt.No.43) at 11, and the infirmities of this claim have not been cured.

### B. Void for vagueness

HART seeks summary judgment on Count Five, in which Ward alleges that the use of the term "objectionable behavior" in the company's regulations governing suspension of passengers is void for vagueness. The court reserves judgment on this issue and will decide it in a subsequent ruling.

### 3. Equal Protection Claims

HART and the HART defendants seek summary judgment on Ward's equal protection claims which he asserts in Counts One, Three, and Twenty–Four. HART argues that Ward has not presented a claim for disparate treatment. HART claims that Ward acknowledges that other passengers have been treated badly by HART drivers and have lodged complaints. In addition, HART points to other passengers who have been suspended due to disruptive behavior, demonstrating that Ward has not been singled out for his speech activities. Finally, HART asserts that Ward's suspension was rationally related to HART's interest in providing safe transportation for its passengers.

The court denies the HART defendants' motion for summary judgment as to Counts One, Three and Twenty–Four. The court denies HART's motion for summary judgment as to Counts Three and Twenty–Four. The court grants HART's motion for summary judgment on Count One.

### i. Analysis of the Constitutional Claim

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In his second amended complaint, Ward asserts his equal protection claim based on an alleged selective enforcement of HART's regulations against him. In order to establish an equal protection violation based upon selective enforcement, the plaintiff must prove that " (1) in comparison with others similarly situated, [he] was selectively treated, and (2) that such selective treatments was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir.2000)(quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)). Ward claims that when he exer-

cised his free speech rights and complained to HART about services and driver performance, HART selectively enforced its regulations against him in violation of his equal protection rights.

### ii. Immunity and Municipal Liability

As the court stated earlier, the right not to be retaliated against and suspended from bus service for exercise of free speech rights is a right that is clearly established. The court finds that conclusion equally applicable to Ward's equal protection claims. Clearly, HART knew that it could not apply its regulations only to Ward simply because he chose to voice his complaints against the bus company. Such selective enforcement could not be considered objectively reasonable either. Therefore, the HART defendants cannot assert an immunity defense against Ward's equal protection claims in Counts One, Three and Twenty–Four.

HART claims that it cannot be held liable as to Ward's equal protection claims. The court finds that, as with the First Amendment claims, HART can be held liable for the equal protection claims asserted in Counts Three and Twenty–Four because the actions at the heart of these claims, namely the issuing of the suspensions of Ward's riding privileges, were performed by Bergstraesser who had policy-making authority in this area. However, the court finds that HART cannot be held liable for Count One because, if Boyd violated Ward's equal protection rights by not allowing Ward to ride the bus while wet when other passengers did so, this was not done pursuant to a HART policy of retaliation and Boyd did not have policy-making authority in this area.

### iii. Summary Judgment Inquiry

The court has found that Ward has set forth a cognizable claim under the Equal Protection Clause. In addition, the court has found that the HART defendants are not immune as to the equal protection claims and that HART can be held liable for Counts Three and Twenty–Four. Therefore, having already asserted a viable claim that his First Amendment rights were violated, following the equal protection analysis for a selective treatment claim, Ward must next establish that he was selectively treated based on his exercise of his First Amendment rights.[6] While the court recognizes that neither party has presented substantial evidence on whether other passengers who complained were treated differently than Ward or whether those passengers who were suspended had previously issued complaints, Ward does present evidence that he was not picked up at bus stops and that he was issued suspensions very soon after he filed complaints with HART. In addition, the court notes that the other passengers whose suspensions HART points to in its Local Rule 9(c)(1) Statement (Dkt. No. 64) were generally engaged in a type of physical confrontation of a sort that Ward is never accused ("Loretta Dunn was suspended for hitting the bus driver;" "Elizabeth Abraham was suspended for three weeks ... for striking a bus driver.") (Dkt. No. 64 at ¶ 34b,d). In light of this evidence, the court finds that there are genuine issues as to material facts in dispute and that the question of selective enforcement should be left to the jury.

Because there are genuine issues as to material facts and the HART defendants cannot assert immunity against the equal

---

6. Ward has included in his papers on these motions some discussion of his obesity and has indicated that he believes that HART found his size threatening. However, this court dismissed Ward's claims under the Americans with Disabilities Act (Dkt. No. 43) at 18–21 and does not consider the issue of disability in its equal protection analysis.

protection claims in Counts One, Three and Twenty–Four, the HART defendants' motion for summary judgment as to these claims is denied. HART's motion for summary judgment as to the parts of Counts Three and Twenty–Four pertaining to the Equal Protection claims against HART in its capacity as a municipal entity is also denied because there are genuine issues of fact in dispute. HART's motion for summary judgment as to Count One is granted because HART cannot be held liable for that claim. To the extent that the Ward's motion for summary judgment deals with these claims, it is denied.

HART and the HART defendants seek summary judgment on Ward's claims asserted under the Connecticut Constitution in Counts One, Three through Six, Eleven, Fifteen, Eighteen and Twenty–Four of the Complaint.[7] HART argues that the Connecticut Constitutional claims should fail for the same reasons as the federal claims, as the provisions of the Connecticut Constitution should be construed in the same way as the United States Constitution. Additionally, HART asserts that there is no private cause of action for monetary damages under Article First, Sections 1, 2, 8, and 20 of the Connecticut Constitution.

■ The court finds that there is no private cause of action for monetary damages under the equal protection and due process provisions (Art. First, § § 1, 8 and 20) of the Connecticut Constitution. *See e.g., Kelley Property Development, Inc. v. Lebanon,* 226 Conn. 314, 339, 627 A.2d 909 (1993). In addition, the court could find no precedent supporting a private cause of action under Article First, Section 2. Ward's claims under Article First, Sections 1, 2, 8 and 20 were previously dismissed by this court, and the infirmities have not been cured. These claims should not have

been included in the second amended claim and need not have been the subject of these summary judgment motions.

The remaining claims fall under the free speech provisions (Article First, Sections Three through Five and Fourteen) and under Article First, Section 9 ("right of personal liberty"). The Connecticut Supreme Court has recognized a private right of action under the free speech clause of the Connecticut Constitution. *See, e.g., Connecticut v. Linares,* 232 Conn. 345, 655 A.2d 737 (1995). Because the court has already denied HART's motion as to Ward's federal First Amendment claims, the court finds that summary judgment should be denied as well as to the claims brought under the Connecticut Constitution as well. *See State v. Linares,* 232 Conn. 345, 377–87, 655 A.2d 737 (1995) (holding that sections 4, 5, and 14 of Article First provide greater protection than the free speech clause of the federal Constitution).

Finally, the Connecticut Supreme Court has recognized a private right of action under Article First, Section 9. *Binette v. Sabo,* 244 Conn. 23, 49–50, 710 A.2d 688 (1998). The factual basis for Ward's claim under Article First, Section 9, is the same as that alleged in the false imprisonment claim laid out in Count Eighteen. As the court discusses later, the facts laid out which form the basis for these two counts are not sufficient to allege a claim of false imprisonment under the common law. Similarly, the court also finds that the facts are not sufficient to allege a claim of false imprisonment under Article First, Section 9. Therefore, HART's motion for summary judgment on claims brought under Article First, Section 9 is granted.

---

7. Ward alleges violations of due process (Art. First, § 8), equal protection (Art. First, § § 1, 20) and free speech (Art. First, § § 2, 3, 4, 5, 14) under the Connecticut Constitution.

### 1. False Imprisonment and "Union Thuggery"

In Count Seventeen of his complaint, Ward asserts a claim for false imprisonment and union thuggery under common law and 49 U.S.C. § 14101. The claim arises from the incident in which Ward was allegedly detained on a HART bus by Amorando, the union president. HART argues that the claim should be dismissed because there is no basis for a claim of "union thuggery." In addition, HART asserts that Ward was never detained on the bus by Amorando because Ward was aboard a bus bound for his home which he had no intention of leaving and having to listen to Amorando does not amount to a claim of false imprisonment.

■ There is no support in common law or statutory law for a claim of "union thuggery." Therefore, HART's motion for summary judgment on that portion of Count Seventeen is granted. In addition, Ward cannot assert a claim of false imprisonment under 49 U.S.C. § 14101 against HART because it is not covered by the statute, see supra 18–19, so HART's motion is granted on that portion of Count Seventeen, as well. Finally, HART's motion for summary judgment is granted as to Ward's claim of false imprisonment under common law because the court finds that Ward has not properly served Amorando with a copy of the second amended complaint and, therefore, cannot be held liable for the claim of false imprisonment.[8] Because Amorando was not acting pursuant to any company policy when he allegedly detained Ward on the bus and because he did not have authority-making policy in the area of the detention of passengers, the court finds that HART cannot

be held liable for his actions. Therefore, the court grants the HART's motion as to Count Seventeen.

HART also seeks dismissal of Count Eighteen of the complaint, in which Ward accuses HART and the HART defendants of "falsely imprison[ing] me by way of detention for another arresting authority" in an incident which occurred on September 19, 1998, and which involved an verbal altercation between Ward and Boyd and Felker and, as a result of which, the Danbury police were called to the scene. Ward alleges that his detention on the bus after the verbal altercation violated the Connecticut Constitution Article, First, sections 8 and 9.

■ As stated earlier, Section 8 does not provide a private cause of action so Ward cannot assert a viable claim under that provision. Ward does have a private right of action under Article First, Section 9, *see Binette v. Sabo,* 244 Conn. 23, 49–50, 710 A.2d 688 (1998) and a cause of action for false imprisonment under common law. "False imprisonment is the unlawful restraint by one person of the physical liberty of another." *Rivera v. Double A Transportation, Inc.,* 248 Conn. 21, 31, 727 A.2d 204 (1999) (quoting *Felix v. Hall–Brooke Sanitarium,* 140 Conn. 496, 499, 101 A.2d 500 (1953)). False imprisonment falls into the category of intentional torts. Thus, in order for liability to be imposed, a person must purposively act to confine another, or must act with the knowledge that the confinement is likely. *Green v. Donroe,* 186 Conn. 265, 268, 440 A.2d 973 (1982). Only extreme recklessness can replace the requirement of intention in a claim for false imprisonment. *Rivera,* 248 Conn. at 32, 727 A.2d 204. In addition to establishing

---

**8.** The court issued an order to Ward on June 28, 2001, requiring him to show proper notice of service on Amorando of the second amended complaint by July 10, 2001. Ward has failed to comply with the order in a timely fashion and so the court finds that Amorando cannot be held liable for the claims contained in that complaint.

intention or recklessness and actual confinement, a plaintiff must also prove that the restraint was against his will and that he did not acquiesce to it willingly. *Lo Sacco v. Young*, 20 Conn.App. 6, 19, 564 A.2d 610 (1989), *cert. denied*, 213 Conn. 808, 568 A.2d 793 (1989).

While Ward alleges in the second amended complaint that he was detained on a bus by Felker and Boyd until the police arrived, Ward never indicates in his Facts Not in Dispute (Dkt. No. 74) that he was prevented from leaving the bus. In fact, both parties agree that Felker and Boyd, who were involved in a verbal altercation with Ward, walked away from Ward and Ward boarded his bus to go home. Defendants' Local Rule 9(c)(1) Statement, (Dkt. No. 64), ¶ 11, Plaintiff's Facts Not in Dispute, (Dkt. No. 74) at 6. Ward has not provided any evidence that the defendants held the bus or locked him inside until the police arrived or that he felt threatened. Facts Not in Dispute (Dkt. No. 74) at 6–7. In addition, in contrast to his complaint, Ward indicates in his Facts Not in Dispute, that the police declined to arrest him during this incident. (Dkt. No. 74) at 3. Ward appears to have been held and questioned at the scene by the police, but he is not asserting any claims against the Danbury police, so this questioning could not be the basis for a false imprisonment claim. In addition, there is *no evidence* presented that could support a claim that the police and HART were engaged in a conspiracy to detain Ward and violate his rights. Therefore, HART's motion for summary judgment as to Count Eighteen is granted.

▄▄ Finally, HART seeks summary judgment on the false imprisonment claim asserted in Count Twenty–One. As discussed previously, see supra 18–19, there is no cause of action under 49 U.S.C. § 14101, so to the extent that the claim

rests on that statutory provision, HART's motion for summary judgment is granted. In the remainder of the claim, Ward asserts that HART would have ejected him from the bus had he attempted to board and that the company used the threat of force to keep him off the buses throughout 1998. He contends that the use of threats of force was false imprisonment. In order for a claim of false imprisonment to stand, the plaintiff must assert that his liberty was actually restrained, not simply that there was a possibility of restraint in the future. Therefore, HART's motion for summary judgment as to Count Twenty–One is granted on the ground that there is no material issue of fact in dispute and as a matter of law defendant is entitled to judgment.

2.  Conn.Gen.Stat. § 53a–110 Claim and Claim for False Statements

▄▄ HART seeks summary judgement on Count Twenty–Six brought under Section 110 of Chapter 53a in which it is alleged to have violated Ward's right to be on public property. Section 110 of Chapter 53a lays out the affirmative defenses to a criminal charge of trespass. While Ward may have asserted a defense under the statute had the Danbury Police Department charged him with trespass, the statute does not provide a private right of action nor a ground on which to allow Ward to assert a cause of action against HART.

▄▄ Likewise, Ward's claim in Count Twenty–Seven against Amorando for "criminally making false statements" suffers from the same infirmity. There is a Connecticut criminal statute which prohibits certain written false statements intended to mislead a public servant. Conn.Gen. Stat. § 53a–157b(a). Again, there is no private cause of action contemplated by this statute. Conn. Gen.Stat. § 53a–

157b(a). Therefore, HART's motion for summary judgment is granted as to these two claims.

### 3. Intentional and Negligent Infliction of Emotional Distress

Ward alleges a number of counts of intentional and negligent infliction of emotional distress. *See* Counts 7, 8, 10, 22 and 23. HART seeks summary judgement on all of these claims. In Ward's Memorandum of Law To Deny Defendants' Motion for Summary Judgment (Dkt. No. 73), Ward states that, while he used the language of negligent and intentional infliction of emotional distress in his second amended complaint, "it would be more appropriate to refer to it as mental anguish and suffering damages ...." Dkt. No. 73 at 2. He then continues to state that he "abandon[s] that terminology as part of my argument ...." Dkt. No. 73 at 2–3. The court interprets this to mean that Ward seeks to drop any claims for intentional and negligent infliction of emotional distress, but he reserves the right to seek compensatory damages for emotional distress as may be permissible under his other causes of action. Therefore, HART and the HART defendants' motion for summary judgment is denied as moot as to claims of negligent and intentional infliction of emotional distress in Counts 7, 8, 10, 22, and 23 in light of Ward's withdrawal of any such causes of action.

Defendants' motion for summary judgment (Dkt. No. 62) is GRANTED in part and DENIED in part.

The court grant the defendants' motion as to plaintiff's due process claims, finding no cognizable property interest in a bus pass, no duty on the part of the defendant to provide bus services to the plaintiff and finding that the plaintiff had waived any property interest in his "fast pass." The court grants defendants' motion as to the

First Amendment claim in Count Thirteen, finding no cognizable First Amendment claim asserted in that count, and grants defendants' motion as to the First Amendment and equal protection claims in Count One against HART finding no municipal liability for those claims. The court grants the defendants' motion as to the claims asserted under the due process and equal protection provisions of the Connecticut Constitution, as well as Article First, Section 2, finding no private cause of action under those sections. The court also grants the defendants' motion as the claim brought under Article First, Section 9, finding that the plaintiff has not asserted a viable claim for false imprisonment. The court grants the defendants' motion as to plaintiff's state law claims for false imprisonment, union thuggery, false statements and under Conn. Gen.Stat. § 53a–110, finding that the plaintiff has not asserted cognizable claims.

The court denies the defendants' motion as to the equal protection claims asserted in Counts One against the individual defendants, and in Counts Three and Twenty–Four, finding that the plaintiff has asserted a cognizable constitutional claim and that material issues of fact remain regarding whether the defendants' suspension policy was selectively enforced against the plaintiff. The court denies the defendants' motion as to the plaintiff's First Amendment claims in Counts One against the individual defendants, and in Counts Four, Twelve, Fifteen and Twenty–Four, finding that the plaintiff has asserted a viable First Amendment claim for retaliation and that material issues of fact remain regarding whether plaintiff's suspensions from the defendants' buses were in retaliation for his exercise of free speech. The court denies defendants' motion as to the claims brought under the free speech provisions of the Connecticut Constitution

finding that the plaintiff has asserted a cognizable constitutional claim and that there are material issues of fact remaining over whether the defendants retaliated against the plaintiff because of his speech. The court denies defendants' motion for summary judgment as to the claims of intentional and negligent infliction of emotional distress as moot, as the plaintiff has withdrawn those causes of action.

The court reserves judgment on the issue of whether the defendants' suspension policy is void on vagueness grounds. Plaintiff's motion for summary judgment (Dkt. No. 65) is DENIED.